Fineberg *v.* Pittsburgh School District,
Appellant.
Fineberg *v.* Pittsburgh, Appellant.

Argued March 20, 1964. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument refused
July 24, 1964.

*Regis C. Nairn,* Assistant City Solicitor, with him *Niles Anderson,* School Solicitor, and *David W. Craig,* City Solicitor, for appellants.

*Abraham Pervin,* for appellee.

OPINION BY MR. JUSTICE COHEN, July 1, 1964:

The School District and the City of Pittsburgh (appellants) claimed additional mercantile license taxes from Herman Fineberg, trading as Industrial Uniform Company (appellee), following their examination of his books and records. The basis of their claims was that Fineberg, who had reported and paid tax as a wholesaler, should have reported and paid tax as a retailer. Fineberg promptly paid the claimed amounts and appealed to the County Court of Allegheny County which sustained his position and ordered the additional amounts refunded. The City and School District appealed.

The parties have filed a statement of the case pursuant to Supreme Court Rule 53 in which they set forth the taxpayer's method of doing business. He purchases work clothing and sells it to industrial laundry service companies. These companies in turn rent the work clothing to their customers under an arrangement whereby clean clothing is delivered and dirty clothing picked up for laundering at regular intervals. The rental charge includes both the cost of the work clothing and the laundering service.

Under both the Act of June 20, 1947, P. L. 745, as amended, 24 P.S. §§582.1-582.13, levying a mercantile tax of one-half mill on wholesalers and one mill on retailers for the benefit of the School District, and the City ordinance, enacted under authority of the Act of

June 25, 1947, P. L. 1145, as amended, 53 P.S. §§6851-6857, levying a mercantile tax of one mill on wholesalers and two mills on retailers for the benefit of the City, a "wholesale dealer" or "wholesale vendor" is defined as one who sells to dealers or vendors.[1] In a series of cases we have held that the test of whether one is a wholesaler or retailer is whether his customers buy for the purpose of reselling. If they do, the taxpayer is a wholesaler; if they do not, he is a retailer. *Kerchner, Marshall & Co. v. Pittsburgh,* 406 Pa. 158, 176 A. 2d 645 (1962); *Paper Products Company v. Pittsburgh,* 391 Pa. 87, 137 A. 2d 253 (1958); *Hughes v. Pittsburgh,* 379 Pa. 145, 108 A. 2d 698 (1954); *Brown & Zortman Machinery Company v. Pittsburgh,* 375 Pa. 250, 100 A. 2d 98 (1953).

Fineberg, as well as the court below, relies strongly on the *Paper Products* case. There we held, inter alia, that a taxpayer who sold wrapping supplies to other persons, which other persons used them in connection with their sales of goods to customers, was a wholesale vendor because the taxpayer's customers transferred title to the wrapping supplies to the ultimate consumers and included the cost of such supplies in the markup of the goods sold. It is true in the present case that the cost of the uniforms is included by the laundry service companies in their rental charge, but it is equally true that title to the uniforms does not pass to the customers of the service companies. In other words, the service companies do not resell the uniforms. A resale by Fineberg's customers is a necessary finding to a conclusion that Fineberg is a wholesaler; since no such finding can be made, the position of the City and School District must be upheld.

Judgments reversed.

---

[1] Use of the dual words "dealers" and "vendors" in the taxing act and ordinance involves no distinction in this respect.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The factual situation presented in the instant case is novel under the taxing statutes in that the sale by the taxpayer is not to one who "resells" in the strict sense of the word, but, likewise, it is not to the ultimate consumer of the product sold. The ultimate consumer is, in fact, the person to whom the buyer from taxpayer leases the uniforms.

Both the city ordinance enacted under authority of the Act of June 25, 1947, P. L. 1145, as amended, 53 P.S. §§6851-6857, and the Act of June 20, 1947, P. L. 745, as amended, 24 P.S. §§582.1-582.13, impose the respective taxes upon "wholesale *vendors* or *dealers*." The majority observes in footnote that "use of the dual words 'dealers' and 'vendors' in the taxing act and ordinance involves no distinction in this respect." I firmly disagree with this position. Such a construction renders mere surplusage language intended by the Legislature to have meaning and is in violation of the principles of statutory construction. See Statutory Construction Act, May 28, 1937, P. L. 1019, §51, 46 P.S. §551.

As noted by the court below: "It is not for us to delete language which the legislators saw fit to include. They did include not only vendors but dealers. Can it reasonably be said that persons who buy clothing, wearing apparel, and continually lease out uniforms for industrial employees, take them back for relaundering and leasing to the same customers or to other customers, are not dealers in goods, wares and merchandise? True, a dealer is also one who buys something in order to sell it, not one who buys to keep or makes to sell. One may be a dealer who buys to sell, and he may be a dealer who buys to lease, he may be both. . . . A person who buys clothing, then sells it or leases it to industrial launderers and/or their employees usually under a lease-use-agreement which pro-

vides for and includes the laundering service is a dealer within the language indicated in our local mercantile license tax acts, ordinances and regulations, supra."

In *Paper Products Co. v. Pittsburgh,* 391 Pa. 87, 137 A. 2d 253 (1958), this Court unanimously held that sales of wrapping and packaging materials by a dealer in paper products to retailers for the purpose of wrapping customers' packages rather than for actual resale were "wholesale sales." Our Court so held because the purchasers from taxpayer used the paper products "in direct connection with the sale of their products," and the cost thereof was included in the retail price of the products wrapped. Similarly, we must here recognize that the uniforms are used in direct connection with the sale of the product sold by the purchasers from taxpayer, uniform leasing and laundering service, and that the cost of the uniforms is calculated into the price of the service being sold.[1]

"Furthermore, if there were any reasonable doubt, tax statutes must be strictly construed in favor of the taxpayer and most strongly against the taxing authorities: [citing cases]." *Paper Products Co. v. Pittsburgh,* supra, 391 Pa. at 94, 137 A. 2d at 257; accord, *Pickering Estate,* 410 Pa. 638, 648, 190 A. 2d 132, 137 (1963).

I dissent.

Mr. Justice O'BRIEN joins in this dissent.

---

[1] The Court in *Paper Products* distinguished wrapping paper from such things as heat, light and showcase on the basis that title to the wrapping paper passes to the customer. In the instant case, the uniforms are much more akin to the wrapping paper, since they are repeatedly in the hands of the ultimate consumer who actually uses them. The more important basis of *Paper Products* is that the paper was used directly in the sale by the retailer. The uniforms here are even more directly involved in the sale, since the sale of the service requires that use of the uniform be included.