## Jackson *v.* Pottstown Zoning Board of Adjustment (et al., Appellant).

Argued April 24, 1967. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*J. Peirce Anderson,* with him *Ronald H. Reynier,* and *Wells, Campbell, Reynier & Yohn,* for appellants.

*John R. Henry,* for appellee.

OPINION BY MR. JUSTICE EAGEN, September 26, 1967:

This is an appeal from an order entered below in a zoning case.[1]

This is the factual background:

Walter M. Detweiler and Vivian, his wife (Detweilers), operated a retail beer distributorship on King Street in Pottstown Borough, Montgomery County, prior to May 1965. Because of inadequate facilities, they sought a new location for the business and engaged Joseph Bishop, a real estate broker, to assist in locating a suitable site. He produced the property involved here, located at 757 Beech Street, Pottstown, which is situated in an R-3 Residential District Classification under the Pottstown Zoning Ordinance enacted in 1963. A retail distributorship is not a permissible use of property in such a district.[2] However, for many years prior to the enactment of the

[1] We granted certiorari following the filing of a petition under Rule 68 1/2 of the Rules of the Supreme Court of Pennsylvania.

[2] A store or shop used for a retail business is permissible only in a district zoned C-1 Commercial.

controlling ordinance, the building on the property had been used in substantial part for the operation of a retail family grocery store, another nonpermitted use, which, therefore, enjoyed the status of a lawful nonconforming use.

Acting on behalf of the Detweilers, Bishop filed an application with the borough officials for permission to operate a retail beer distributorship business on the property. As a result he received a letter from the Pottstown Borough Manager assuring him that, under the pertinent provisions of the zoning code,[3] the nonconforming grocery use could be validly changed to the nonconforming distributorship use, provided there were no structural alterations to the building involved. The Detweilers then purchased the property and subsequently secured a building permit to construct a walk-in refrigerator and a drive-in area for customers. Later a group of nine neighborhood property owners filed a timely appeal from the issuance of the building permit (their first knowledge of any of these proceedings was the initiation of construction).

This appeal was sustained since the zoning code, here in question, allows structural alterations of nonconforming uses only upon the grant of a special exception, which had not been sought or allowed. (See n. 3, supra.)

---

[3] Section 1200, Art. XII of the zoning ordinance reads in pertinent part as follows: "3. Change. [of nonconforming use] A nonconforming use of a building or land may be changed to a nonconforming use of the same or more restricted classification, if no structural alterations are made therein, provided that such change may include structural alterations when authorized as a special exception by the Board of Adjustment. : . ."

The classification of commercial uses is found in Art. VII, §701 of the zoning code. Insofar as such section is relevant here, it provides: "A building may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other: . . . 3. Store or shop for *any retail business;* commercial greenhouse. . . ." (Emphasis added.)

Thereafter, the Detweilers applied for the necessary special exception. A public hearing was scheduled and it was stipulated that the zoning board, along with determining the special exception question, would also resolve the threshold issue of whether the beer distributorship was a use of the same or more restricted classification as that of a grocery use, according to the commercial hierarchy established by Art. VII, §701 of the zoning ordinance. (See n. 3, supra.)

The zoning board of adjustment determined all issues in favor of the Detweilers holding that, under the provisions of the Pottstown zoning ordinance, the change in nonconforming uses in this particular case was valid; and, further, that the structural changes involved were permissible as accessory uses of the legal nonconforming beer distributorship.

The protesting property owners then petitioned the Court of Common Pleas of Montgomery County to issue a writ of certiorari, and for permission to intervene. The requests were granted. Later the court reversed the order of the zoning board of adjustment and the Detweilers appealed here.

Since no additional testimony was taken before the lower court, the question on appeal to this Court is framed in terms of whether the zoning board of adjustment abused its discretion or committed an error of law in granting the requests of the Detweilers. *Brennen v. Zoning Board of Adjustment,* 409 Pa. 376, 379, 187 A. 2d 180, 182 (1963); *Lance Appeal,* 399 Pa. 311, 313, 159 A. 2d 715, 716 (1960).

The prime guideline in this, as well as every zoning case, is the pertinent zoning ordinance itself. Case law, of course, is a helpful factor, but the principal judicial inquiry must logically be to the language of the statute or ordinance in controversy.

Our first question here, then, is whether it was an abuse of discretion or an error of law to decide, as did

the instant board of adjustment, that a beer distributorship is within the same commercial classification, more precisely within the same commercial sub-division, as a grocery store *under the terms of the Pottstown zoning ordinance.* It is our view that the zoning board did not abuse its discretion or commit an error of law in so finding. One's own personal opinion might well be that there is a distinct difference between a neighborhood grocery store and a beer distributorship, i.e., between food, an essential commodity, and beer, certainly a nonessential one. This personal response, whether it be intestinal or otherwise, is surely valid. However, the criterion in this zoning case is the Pottstown ordinance and its clear language delineates the permissible boundaries of our exploration. Under Art. XII, §1200(3.) of that law, provision is made for the change from one nonconforming use to another. The possibility of a case such as we have before us was obviously considered by the borough legislators. Change was explicitly permitted with the proviso that the change be to a use within the same or "higher" commercial classification.[4]

Commercial uses are classified in Art. VII, §701 of the zoning ordinance. There are nine such classifications. Classification Three includes, "Store or shop for any retail business." The subsequent classifications name specific retail businesses, which are, apparently, excluded from the broad scope of number three. It is our feeling that if the borough fathers wished to exclude a beer distributorship or similar business from inclusion in Classification Three, they would have done so, as they specifically did with other businesses. However, they did not. Perhaps this omission was a (now) lamentable oversight; perhaps

---

[4] For a general discussion of the subject of changes in nonconforming uses, see Annot., 87 A.L.R. 2d 4 (1963).

not. In any event, we must deal with the ordinance as it now stands; and, as it stands, there is no commercial distinction made between a grocery store and a beer distributorship. Thus, we are unable to say that the zoning board of adjustment of the Borough of Pottstown abused its discretion or committed an error of law, when it held that the change in nonconforming uses in this case was valid under the ordinance.[5] Indeed, the board seems to have interpreted the ordinance in logical fashion.

We next turn to the matter of the walk-in refrigerator, constructed by the Detweilers at the rear of the main building, and the drive-in area also constructed by appellants, both done under special exception granted by the board of adjustment.

We have consistently held that a lawful nonconforming use may be validly expanded by a reasonable accessory use which is not detrimental to the public health, welfare or safety. See *Gross v. Zoning Board of Adjustment*, 424 Pa. 603, 607, 227 A. 2d 824, 826-827

---

[5] The rationale behind the allowance of nonconforming uses is supposed to be the protection of rights vested in the owner of property "caught", so to speak, by the initiation of zoning. This Court has held, however, that the right to a nonconforming use runs with the land, not the ownership thereof: *Eitnier v. Kreitz Corp.*, 404 Pa. 406, 412, 172 A. 2d 320, 323 (1961); see also, 8A McQuillin, Municipal Corporations §25.191 (3d ed. Rev. Vol. 1965). Hence, the fact that in the instant case we have a change in an existing nonconforming use coupled with a change of ownership is of no moment under present Pennsylvania law. It is now this writer's own personal view, however, that such situations pose a threat to effective zoning without the mitigating factor of protection of property rights being present. Thus, it may well be that the *Eitnier* view, supra, could bear re-examination in light of the "rationale" stated above, as well as for the very pragmatic reason of preventing trafficking in nonconforming uses (and thus thwarting the vitality of Pennsylvania zoning). Since the issue has been neither briefed nor argued in the instant case, we will not pursue it here.

(1967), and cases cited therein. It is our conclusion that it is reasonable and usual for a retail beer distributorship to have a walk-in refrigerator and a small parking area (within the limits described here) on its premises, and the existence of these accessory uses on the premises involved will not be detrimental to the public health, welfare or safety.

The order of the court below is reversed and the order of the Pottstown zoning board of adjustment is reinstated.

Mr. Justice COHEN took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In my view the majority incorrectly upholds the zoning board's conclusion that appellants' beer distributorship would be a permitted use by virtue of being a "retail business" under Art. VII, §701(3) of the zoning code. Both the findings of fact of the board[1] and the Liquor Code's description of Detweilers' license[2] indicate that appellants sell to clubs, hotels and restaurants as well as to consumers. Insofar as the former sales are concerned, Detweilers' business may hardly be classified as retail; for the clubs, hotels and restaurants themselves resell the beer purchased from Detweilers and do so under a "retail dispenser's license."[3] Surely, no more than one link in a chain of

———

[1] Act of April 12, 1951, P. L. 90, §102, as amended, 47 P.S. §1-102 (Supp. 1966) (definition of distributor) ; Act of April 12, 1951, P. L. 90, §431, as amended, 47 P.S. §4-431(b) (Supp. 1966).

[2] "Applicants [Detweilers] sell beer by the case lots and kegs to individual patrons who call at the place of business, and, in addition, applicants make delivery by truck of beer in case lots or kegs to customers at their homes and/or customers' places of business, such as taprooms, social clubs, bars, etc."

[3] Liquor Code §4-432(a), Act of April 12, 1951, P. L. 90, §432, as amended, 47 P.S. §4-432(a).

distribution may properly be denominated retail.[4] Thus a significant portion of Detweilers' proposed use of the premises is nonretail. That being so, the zoning board committed an error of law in interpreting the ordinance's phrase "retail business" to encompass Detweilers' proposed use.

Accordingly, I dissent.

---

[4] See, e.g., *Kerchner, Marshall & Co. v. Pittsburgh*, 406 Pa. 158, 176 A. 2d 645 (1962) ; *Fincberg v. Pittsburgh School Dist.*, 415 Pa. 108, 202 A. 2d 26 (1964).