## Silver, Appellant, *v.* Zoning Board of Adjustment.

Argued May 8, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Harold Greenberg*, with him *Reuben E. Cohen*, and *Cohen, Shapiro, Berger, Polisher & Cohen*, for appellant.

*Matthew W. Bullock, Jr.*, Second Deputy City Solicitor, with him *Carl K. Zucker*, Assistant City Solicitor, and *Edward G. Bauer, Jr.*, City Solicitor, for board, appellee.

OPINION BY MR. JUSTICE JONES, June 27, 1969:

At issue in this case is the constitutionality of a provision in the Philadelphia Zoning Code of 1962 prohibiting an increase in the number of units of certain non-conforming multiple dwellings. Section 14-104(3)(b) of the Code states: "Any non-conforming multiple dwelling subject to the provisions of Subsection (1)[1] shall be deemed non-conforming as to the specific number of dwelling units contained therein, and nothing herein shall be construed to permit the addition of further dwelling units not in conformity to the regulations of the district in which it is located."

Appellant Max Silver owns a non-conforming apartment building in a district which is now zoned "R-5"

---

[1] Subsection (1) includes all structures which were non-conforming under the 1933 Code.

Residential.[2] The apartment building was constructed in 1926 and contained 33 units at that time. It became a valid and legal non-conforming use when Philadelphia's first comprehensive zoning code was adopted in 1933. When the present zoning code was adopted in 1962 the building contained 46 units. In April of 1965 Silver applied for a use permit to increase the number of units to 50. This increase would be accomplished solely by subdividing larger apartments; no changes would be made in the height or bulk of the building. When the use permit was refused, Silver appealed to the Zoning Board of Adjustment, which treated the appeal as a request for a variance and denied relief. On appeal to the Court of Common Pleas, the controversy focused on the constitutionality of the zoning code provision. The Court (per WATERS, P. J.) upheld the constitutionality of the statute and denied relief. Silver took an appeal to this Court.

The doctrine of natural expansion was promulgated by this Court some forty years ago: "Petitioner's business had been established at its present location long before the passing of the zoning ordinance and was actively conducted at the time the ordinance went into effect; accordingly, as the property was then used for lawful purposes, the city was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion and the accommodation of increased trade, so long as such additions would not be detrimental to the public welfare, safety and health." *Gilfillan's Permit,* 291 Pa. 358, 362, 140 A. 136 (1927).[3]

---

[2] "R-5" Residential permits single and duplex dwellings but does not permit multiple dwellings.

[3] *See:* Note, *The Expansion Doctrine in Pennsylvania,* 22 U. Pitt. L.R. 747 (1961).

Since that date the rule has been reiterated by this Court in several decisions.[4] The rationale behind the doctrine can be traced to the due process requirements protecting private property.[5] If a person owns property which constitutes a valid non-conforming use, it is inequitable to prevent him from expanding the property as the dictates of business or modernization require. An obvious example is an owner of a non-conforming apartment building who finds that there is no longer a market for multi-bedroom units and desires to subdivide some of his larger apartments. Although our opinions have apparently never explicitly so held, we must conclude from the tenor of these decisions that the right of natural expansion is a constitutional right protected by the due process clause.[6]

This right is not unlimited, however. The contemplated expansion must not be detrimental to the public health, welfare and safety.[7] We have never questioned the right of a municipality to impose reasonable restrictions on the expansion of a non-conforming use.[8] The doctrine as it stands today was well stated by Mr. Justice EAGEN in *Gross v. Zoning Board*

[4] *See, e.g.*: *William Chersky Joint Enterprises v. Board of Adjustment*, 426 Pa. 33, 36, 231 A. 2d 757 (1967) ; *Jackson v. Pottstown Zoning Board of Adjustment*, 426 Pa. 534, 539, 233 A. 2d 252 (1967) ; *Davis Appeal*, 367 Pa. 340, 346, 80 A. 2d 789 (1951) ; *Humphreys v. Stuart Realty Corp.*, 364 Pa. 616, 621, 73 A. 2d 407 (1950).

[5] *See: Lieberman and Rabin, Pennsylvania Zoning*, 93 (1958).

[6] "If we were to prevent the natural growth and expansion of a protected nonconforming use, we would invade the constitutional guarantees of due process which indeed brought the nonconforming principle into being." *Upper Darby Twp. Appeal*, 391 Pa. 347, 354, 138 A. 2d 99 (1958).

[7] *See e.g.*: *Jackson v. Pottstown Zoning Board of Adjustment*, *supra* n. 4, at 539.

[8] *See*: *Everson v. Zoning Board of Adjustment*, 395 Pa. 168, 149 A. 2d 63 (1959).

*of Adjustment,* 424 Pa. 603, 227 A. 2d 824 (1967): "We have consistently held that a lawful non-conforming use . . . may validly be expanded by a reasonable accessory use which is not detrimental to the public health, welfare and safety. [Citing authorities]. Pennsylvania's ruling in this respect is premised upon the view that the owner of property to which a lawful nonconforming use has attached enjoys a vested property right thereto which may not be abrogated, unless it is a nuisance, or abandoned, or is extinguished by eminent domain [Citing authorities], and that a zoning ordinance cannot preclude a natural and reasonable expansion thereof." (424 Pa. at 607)

We must evaluate §14-104(3)(b) of the Philadelphia Zoning Code in light of these principles. Our research indicates that this section represents the first effort by a municipality to forbid any and all natural expansion of a non-conforming use. Since our decisional law has long recognized a vested right of natural expansion, we are constrained to hold that a municipality cannot prohibit per se the natural expansion of a non-conforming use. Therefore, the section in question violates due process and must be stricken as unconstitutional.

We are well aware that zoning authorities look upon nonconforming uses as the bane of their existence, and we can appreciate their efforts to keep non-conforming uses within bounds. Nevertheless, these authorities cannot arbitrarily abrogate a landowner's vested right of natural expansion by prohibiting all such growth. The municipality certainly can condition such expansion on certain prerequisites and standards necessary for the preservation of the health, safety and welfare of the community. We upheld just such an ordinance in *Everson v. Zoning Board of Adjustment,* 395 Pa. 168, 149 A. 2d 63 (1959). The City of Philadelphia could lawfully pass a zoning ordinance

requiring that certain health, safety and welfare standards be met before the number of units in a nonconforming apartment building could be increased. What the City cannot do is indiscriminately forbid all natural expansion.

Order reversed. Matter remanded to the Zoning Section of the Department of Licenses and Inspections for proceedings not inconsistent with this opinion.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

I do not consider an increase in the number of apartments in a non-conforming apartment house to be a natural expansion. Nor do I feel that the zoning ordinance which provides that a non-conforming multiple dwelling shall be limited to the specific number of dwelling units presently contained therein is unconstitutional as applied to this or any other property. The ordinance restricting the aggravation of a non-conforming use is enacted to protect the health, moral safety and general welfare of the neighborhood. These objectives are adversely affected by the majority's determination.

Mr. Justice POMEROY joins in this dissenting opinion.