**Hertsch Appeal**

*John J. Rufe*, for appellants.

*Mark E. Weand, Jr.*, for zoning hearing board.

MOUNTENAY, J., September 8, 1972.—This is an appeal from a decision of the Zoning Hearing Board of Telford Borough dealing with appellants' application to change an existing nonconforming use to another nonconforming use. The zoning hearing board made 16 findings of fact, and the record of the board was supplemented at a hearing on appeal to this court. We view some of the board's findings as unnecessary to the disposition of the matter, but all of the findings are supported by the entire record and are, therefore, affirmed. The court supplements the board's findings of fact by one additional finding, as follows:

"The appellants did not abandon their non-conforming use; on the contrary, they went out of the greenhouse-florist business because of husband-appellant's ill health."

The record, as reflected in the findings of fact, establishes that appellants are the owners of a greenhouse-florist shop constituting a nonconforming use in a "B" residential district. On or about September 13,

1971, appellants closed their greenhouse business and prior to October 8, 1971, applied to the zoning officer for a permit to change the greenhouse-florist shop use to that of "7-11" retail food store. The zoning officer having refused this application, appellants appealed to the zoning hearing board. The appeal application filed with the board, while setting forth numerous facts in support of appellants' contention that the permit should have been granted, characterizes itself neither as an application for a special exception nor as an application for a variance. The public notice of the hearing before the board, however, characterized the appeal as an application for variance.

The zoning ordinance, of course, permits neither greenhouses nor retail food stores in "B" residential districts. Both of these uses, however, are permitted in commercial districts.[1] Section 600, pertaining to commercial uses, contains nine subsections listing various types of uses permitted in commercial districts as a matter of right. Subsection C thereof, pertaining to retail food stores, reads as follows:

"C. Retail establishment for the sale of dry goods, variety and general merchandise, clothing, food, drugs, furnishings, or other household supplies, sale and repair of jewelry, watches, clocks, optical goods or musical, professional or scientific instruments;"

The permitted uses under section 600, subsection F, are merely "greenhouse; florist shop."

While the right to change a nonconforming use is not affirmatively conferred in the ordinance, this right is granted by negative implication in section 1004 which reads as follows:

"Change of Use. A non-conforming building or use

1. Five zoning classifications are established, viz., three classes of residential districts, a commercial district and a light industrial district.

shall be considered as such unless and until it complies with the regulations of the district in which it is located. Such use shall not be changed to a use designated for a district having less restrictive regulations."

Section 1007 then purports to delegate certain functions to the zoning hearing board in the following language:

"Change or Resumption of Nonconforming Uses. The Board of Adjustment shall have discretion to determine what resumption or change of nonconforming use is of the same class of use and permissible."

Another provision, section 1005, entitled "Discontinued Use," should be noted in passing. This section reads:

"Discontinued Use. A non-conforming use, when discontinued, may be resumed any time within two (2) years from such discontinuance, but not thereafter. The resumption may be of the same class of use, but shall not be resumed as a non-conforming use of a lower class."

We are of the opinion that section 1005 is intended to deal with the abandonment of nonconforming uses and simply means that after abandonment, a nonconforming use must be resumed within two years or not at all. The cases equating the term "discontinuance" to "abandonment" are legion,[2] and in the present instance there was no evidence whatever of an intention on the part of the appellants to abandon their nonconforming use. On the contrary, appellants went out of the greenhouse business because of the husband-appellant's ill health. Besides, section 1004 itself states that a nonconforming use shall be considered as such

2. Haller Baking Company's Appeal, 295 Pa. 257 (1928). For more recent authority, see West Mifflin v. Zoning Hearing Board, 3 Comm. Ct. 485, 492 (1971), and the cases therein cited.

until it complies with the regulations of the district in which it is located. This further tends to negate any argument that appellants' nonconforming use was "discontinued." Accordingly, we believe that section 1005 has no application to the present proceeding.

On the surface, the meaning of section 1004 seems clear, and were it not for the case of Darling v. Zoning Board of Adjustment of Philadelphia, 357 Pa. 428 (1947), we should have little difficulty in concluding that appellants were entitled to their requested change of use as a matter of right. However, the Darling case seemed to deny a change of use on the basis of language of the Philadelphia Zoning Code of 1933 almost identical to the language of the ordinance here before us.

In Darling, the premises in question had been used at the time of the enactment of the zoning ordinance as a real estate office. The area in question was zoned "B" residential, and the use thus became nonconforming. Subsequently, appellant sought to use the premises as a tailor shop, both the former use and the new proposed use being permitted in commercial districts.[3] The court considered the language of two provisions of the Philadelphia Zoning Code. The first provision, dealing with changes in use, was identical to section 1004 of the Telford Borough Zoning Ordinance. To repeat, this provision is as follows:

"Change of Use. A non-conforming building or use shall be considered as such unless and until it complies with the regulations of the district in which it is located. Such use shall not be changed to a use designated for a district having less restrictive regulations."

The other section of the Philadelphia Code which

3. The opinion states that there were four subclassifications of commercial districts, but it does not indicate whether or not these two uses fell within the same *sub*classification.

the Darling opinion considered was that dealing with the discontinuance of nonconforming uses. This provision, similar but not identical to the comparable provision in the Telford Ordinance, reads as follows:

"(4) Discontinued Use. A nonconforming use when discontinued may be resumed as the same class of use but cannot be resumed as a nonconforming use of a lower class."[4]

In construing these two sections together, the court stated that the drafters intended these provisions to mean the same thing as that much shorter provision considered in Haller Baking Company's Appeal, 295 Pa. 257, 259, 260 (1928), which provided:

". . . 'The lawful use of land existing at the time of the adoption of this ordinance, although such use does not conform to the provisions hereof, may be continued, but, if such nonconforming use is discontinued, any future use of said land shall be in conformity with the provisions of this ordinance' . . ."

But Haller dealt not with a proposed change in an existing nonconforming use but rather with an attempt to reinstate a nonconforming use previously abandoned. Moreover, Haller was one of those cases which clearly held that the term "discontinued," in this context, was the equivalent of "abandoned" and that mere failure to use did not constitute abandonment.

Indeed, Darling itself did not involve a mere change in an existing nonconforming use but rather an attempt to reestablish a nonpermitted use following the abandonment of a prior nonconforming use. While this distinction is not too apparent from the language of the Darling opinion, the court does recite that the building in which the nonconforming real estate

---

4. It will be recalled that section 1005 of the Telford Borough Ordinance provided for a two-year "discontinuance period."

office had been located was " 'vacant and in a dilapidated condition' ": Page 429. It appears also that the Supreme Court reporter felt that the abandonment feature of the case should be emphasized, because in the headnote to the Darling opinion, the words "cessation of a nonconforming use" are italicized. As such, Darling is just another precedent, among many, holding that once a nonconforming use of premises is abandoned, all further use must conform to the requirements of the district in which it is located.

The board in the instant case relies heavily on Darling. But if Darling is indeed an abandonment case, then it does not stand for the proposition for which it is cited, nor does it provide a precedent for the board's action. Unfortunately, the language of Darling has not always been recognized as being limited to abandonment situations,[5] but when squarely confronted with a factual situation requiring the recognition of this limitation, the courts have thus limited and distinguished Darling.[6]

We believe that the situation presently before us is controlled not by the Darling decision but rather by Lower Moreland Township v. Shell Oil Co. et al., 3 Comm. Ct. 259 (1971). In the latter case, the zoning ordinance permitted the change of one nonconforming

5. Darling was followed in Sague v. Whitemarsh Township, 87 Montg. 23 (1966). It was cited with approval in Williams Appeal, 174 Pa. Superior Ct. 570 (1954), but the facts were distinguishable. It was also cited with approval in Luciany v. Zoning Board of Adjustment, 399 Pa. 176 (1960), and was there followed as an alternate basis for decision. Darling was criticized in Seitchik v. Zoning Board of Adjustment, 13 D. & C. 2d 43 (1957), but it was not there controlling inasmuch as a subsequent amendment of the Philadelphia Zoning Code governed the situation.

6. Faltenbacher v. Zoning Board of Adjustment, 12 D. & C. 2d 364 (1957); Jerrahian v. Zoning Board of Adjustment, 10 D. & C. 2d 494 (1957).

use "to another non-conforming use of the same or more restrictive classification" upon authorization by special exception. Appellant had used his premises, situated in a residential district, for the sale of beer and groceries. Appellant proposed to demolish the existing structure and to erect in its place a modern gasoline service station. Both the existing and the proposed use were permitted in "D" commercial districts, and the evidence having established appellant's right to a special exception, the court directed that a permit issue. A similar result was reached in McDevitt v. Warminster Township Zoning Board of Adjustment, 19 Bucks 524 (1970), where the language of the zoning ordinance permitted changes to new nonconforming uses where "the new use shall be a permitted use in the zoning district in which the original non-conforming use is listed as a permitted use." See also Munhall Borough Council Appeal, 175 Pa. Superior Ct. 320 (1954); Jerrahian v. Zoning Board of Adjustment, 10 D. & C. 2d 494 (1957); Press v. Board of Adjustment, 8 Bucks 320 (1958); Smith v. Westpfahl, Director of Public Safety, 52 D. & C. 51 (1944); Appeal From Decision of Board of Adjustment, etc., 47 Wash. Co. 191 (1967). Cf. Molnar v. George B. Henne & Co., Inc., 377 Pa. 571 (1954), and Kentucky Fried Chicken Zoning Appeal, 60 Luzerne 41 (1969). Contra, Houtz v. Concord Township Zoning Hearing Board, 58 Del. Co. 308 (1971).

Some decisions permitting changes of nonconforming uses have implied that such changes would be permitted only if the new use fell within the same subclass as the original nonconforming use. For example, Mutimer Company v. Wagner, 376 Pa. 575 (1954), permitted a real estate office to be converted to an office for the sale of machinery, neither of which uses was permitted in the residential zone in which the

property was located. One of the use regulations for commercial districts permitted a "store, office, studio, . . . telegraph office and place of amusement." The court held that the proposed conversion did not constitute a change of use in the legal sense in that both uses fell within the same *subdivision* of the use class. See also Jackson v. Pottstown Zoning Board of Adjustment, 426 Pa. 534 (1967), and Faltenbacher v. Zoning Board of Adjustment, 12 D. & C. 2d 367 (1957). The application of this principle to the case at hand, however, would be meaningless, since the use subdivision within which appellant's greenhouse-florist shop falls (section 600F) is limited to greenhouses and florist shops; no other uses are permissible. Thus, subsection F is so narrow and restricted that it could hardly be regarded as establishing a subclass of uses within which changes would be permitted. See discussion in Lower Moreland Township v. Shell Oil Co. et al., supra, at page 263.

It will be recalled that Lower Moreland Township v. Shell Oil Co. et al., supra, involved an ordinance permitting changes in nonconforming uses only by special exception, as did the ordinance in McDevitt v. Warminster Township Zoning Board of Adjustment, supra. While the proceeding before the zoning hearing board in the instant case was advertised as a hearing on an application for a variance, and while the testimony offered would have been pertinent to an application for either a special exception or a variance, we find no authority for the board's treating the appeal as anything other than an appeal from an error of the zoning officer under section 1301A of the ordinance (see section 909 of the Pennsylvania Municipalities Planning Code of July 31, 1968 (No. 247), 53 PS §10909). Nowhere in the ordinance is the change of a nonconforming use conditioned upon the grant of a

special exception, and the authority of the board to grant a special exception has always been limited to instances in which the zoning ordinance specifically provides for the grant of a special exception: Pennsylvania Municipalities Planning Code, *supra*, sec. 913, 53 PS §10913.

This very issue confronted our court in Press v. Board of Adjustment, supra, where the board, while approving the change of a nonconforming use to another nonconforming use of the same classification, imposed a number of conditions. Judge Satterthwaite, speaking for the court, held that the imposition of conditions was improper, that appellant was entitled to the change as a matter of right, and that the board had no authority to treat the matter as an application for variance or for special exception. Accordingly,we believe that the findings of fact and the testimony with respect to the effect of the proposed use on the neighborhood are irrelevant to the issue before use. We hold instead that appellants were entitled to their proposed change as a matter of right.

Finally, the effect of section 1007 of the Zoning Ordinance should be discussed. Again, this provision reads as follows:

"Change or Resumption of Non-Conforming Uses. The Board of Adjustment shall have discretion to determine what resumption or change of non-conforming use is of the same class of use and permissible."

We believe that this provision is intended to permit the board to resolve issues of fact with respect to the nature of existing nonconforming uses for the purpose of determining into what use classifications they might fall and also, for the same purpose, to resolve issues of fact, if any, with respect to the proposed

uses. We do not believe that this provision was designed to confer upon the board, once the factual issues are determined, any discretion in determining which proposed changes of use should be permitted and which should not. "This would give unlimited and unbridled power to the Board of Adjustment without any standards to guide its exercise of discretion. It is a legislative function to say what uses are permitted in a district": Mutimer Company v. Wagner, supra, at page 581. Inasmuch as we have already decided that the proposed change of use, viz., a retail food store, falls within the same use class as the existing use, viz., a greenhouse-florist shop, the board erred in concluding that the proposed use was not permissible. We are of the opinion that the board arrogated unto itself exclusively legislative functions in its application of this provision of the zoning ordinance.

We conclude, therefore, that since both greenhouse-floral shops and retail food stores constitute permitted uses in the borough's commercial districts, the proposed use does not constitute a use designated for a district having less restrictive regulations. Further, since the ordinance does not condition a change of nonconforming use upon the grant of a special exception, appellant is entitled to the change of use as a matter of right.

## ORDER

And now, September 8, 1972, the decision of the zoning hearing board is reversed and the zoning officer is directed to issue a permit in accordance with appellants' application.