626 A.2d 1147

**Harry A. and Maryrita SWEENEY and the Haverford Civic Association, Appellees,**

v.

**The ZONING HEARING BOARD OF LOWER MERION TOWNSHIP, Appellant,**

**and**

**Philadelphia Properties, Inc. and Lower Merion Township, Appellant/Intervenors.**

**Appeal of PHILADELPHIA PROPERTIES, INC.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1991.

Decided June 1, 1993.

Joel P. Aaronson, Pittsburgh, for appellant.

James K. Brengle, Haverford, for Sweeney, et al.

Robert S. Ryan, Philadelphia, for Zoning Hearing Bd. of Lower Merion Tp.

Gilbert P. High, Jr., Norristown, for Lower Merion Tp.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

Appellant, Philadelphia Properties, Inc. ("Properties"), appeals from the Order of the Commonwealth Court affirming the Order of the Court of Common Pleas of Montgomery County, sitting *en banc*, reversing a decision by the Zoning Hearing Board of Lower Merion Township ("Board"), which, in part, granted Properties a variance to extend automobile parking into an area zoned R–2 Single Family Residential District. 132 Pa.Cmwlth. 548, 573 A.2d 664. The issue presented in this case is whether, where the purpose of the relief sought is to improve and expand Properties' apartment build-

ings and parking lot, Properties' nonconforming use should be considered an important factor in determining if an unnecessary hardship exists that would justify the grant of a variance. For the reasons that follow, we reverse the Order of the Commonwealth Court and remand the case to the Zoning Hearing Board of Lower Merion Township.

Properties is the owner of land bisected by a zoning district boundary line. The boundary line divides the land so that a portion of the land is in the R–7 Multifamily Residence District and a portion of the land is in the R–2 Single Family Residential District.

Approximately sixty years ago, two apartment buildings containing 128 units and 102 parking spaces were constructed on the portion of land zoned R–7 Multifamily Residence District, which allows parking lots. In the R–2 Single Family Residential District, the Lower Merion Code does not allow parking facilities serving occupants of more than one residence. In 1981, Lower Merion Township passed a zoning ordinance requiring two parking spaces per apartment unit; thus, Properties' apartment complex became nonconforming as to parking. Lower Merion Code § 155–95(a).[1]

In 1988, Properties planned to rehabilitate the property through renovation of the buildings and expansion of parking into the portion of the land zoned R–2 Single Family Residential District. Consequently, on June 1, 1988, Properties requested relief from the Board to allow Properties to build an open air parking lot on most of the land designated R–2 Single Family Residential District in order to properly support the apartment units. Specifically, Properties requested approval for a 100 foot extension of the R–7 Multifamily Residence District into the R–2 Single Family Residential District.[2]

1. At the time of construction of the apartment buildings, the Lower Merion Code did not contain a provision requiring a specific number of parking spaces per residential unit. Therefore, as a result of the 1981 ordinance, the apartments continue to function with their substandard parking facilities as a nonconforming use.

2. Lower Merion Code § 155–8 permits a less restricted district to be extended for a distance of 50 feet of right and an additional 50 feet by special exception.

Properties also requested a variance for additional parking inside the remaining R–2 Single Family Residential area. Additionally, Properties proposed to reduce the number of apartment units and to construct eight townhouse units.

On September 8, 1988, the Board denied Properties' applications without prejudice to assert such claims for relief as it may wish to assert in connection with any revised plans which it may prepare. Properties revised its plans and submitted an application for special exception and variance, but abandoned the plan to install eight townhouses. On February 9, 1989, the Board granted Properties' request to permit extension of the R–7 Multifamily Residence District over the R–2 Single Family Residential District for the full 100 feet permitted by Lower Merion Code § 155–8.[3] Properties' application for variance to convert most of the remaining R–2 Single Family Residential District portion of land to apartment parking was denied as requested. However, the Board granted an alternative variance which allowed Properties to utilize the R–2 Single Family Residential District portion of land for parking in connection with the apartment buildings, provided that the parking lot be at least eighty feet from the bordering street and that Properties comply with several buffer devices.

Appellees, Harry A. and Maryrita Sweeney and the Haverford Civic Association, appealed the Board's decision to the Montgomery County Court of Common Pleas. The Court of Common Pleas, receiving no additional evidence, affirmed the special exception granted by the Board,[4] but reversed the alternative variance. The Court of Common Pleas found that the property had an ample use as zoned, and thus, there was no existing hardship warranting a variance. Properties appealed the denial of the alternative variance to the Commonwealth Court. The Commonwealth Court affirmed the Court of Common Pleas on the grounds that Properties did not

3.  See note 3, *supra.*

4.  The special exception allowed Properties to extend the R–7 Multifamily Residence District 100 feet into the R–2 Single Family Residential District. There is no issue before this Court concerning the special exception.

suffer any unnecessary hardship under the circumstances. Properties appealed to this Court and we granted allocatur. 527 Pa. 606, 589 A.2d 695 (1991).

Appellees argue that the Board committed a manifest abuse of discretion and an error of law in granting the variance allowing Properties to expand the parking lot across a zoning district boundary into a zoning district for single-family residences which does not allow parking facilities serving occupants of more than one residence. They argue that nothing less than a showing of hardship which is special and peculiar to the property will empower a Zoning Hearing Board to permit a variance. *Magrann v. Zoning Bd. of Adjustment*, 404 Pa. 198, 170 A.2d 553 (1961). They state that a variance should be granted only when it is not contrary to the public interest and when the property involved is subjected to an unnecessary hardship unique or peculiar to itself, and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance. *Id.* at 200, 170 A.2d at 554. They assert that the authority of the Board is not an arbitrary one and it may grant a variance only for reasons that are substantial, serious and compelling. *Id.*

Properties argues, conversely, that the Board did not abuse its discretion or commit an error of law in granting the variance allowing the expansion of the parking lot into the R–2 Single Family Residential District. Properties submits that the expansion was necessary for the functioning and viability of the restored and modernized nonconforming apartment complex.

In addressing this matter, this Court is guided by a well established standard of review. Where neither the Court of Common Pleas nor the Commonwealth Court conducted a hearing or received any evidence in this matter, this Court is to determine whether the Board committed an abuse of discretion or an error of law in granting Properties a variance. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 501 Pa. 550, 554, 462 A.2d 637, 639 (1983). This Court can conclude that the Board abused its discretion only if its findings are not

supported by substantial evidence. *Id.* at 555, 462 A.2d at 640. By "substantial evidence" we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In 1927, this Court first enunciated what is now commonly referred to as the "Natural Expansion Doctrine." *See In re Gilfillan's Permit,* 291 Pa. 358, 140 A. 136 (1927). In that case we stated that "as the property was then used for lawful purposes, the city was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion and the accommodation of increased trade...." *Id.* at 362, 140 A. at 138. Later, we stated that " 'a non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time of the ordinance was enacted should have utilized the entire tract upon which the business was being conducted.' " *Mack Zoning Appeal,* 384 Pa. 586, 588–89, 122 A.2d 48, 50 (1956) (quoting *Humphreys v. Stuart Realty Corp.,* 364 Pa. 616, 621, 73 A.2d 407, 409 (1950)). *See also Philadelphia Art Alliance v. Philadelphia Zoning Bd. of Adjustment,* 377 Pa. 144, 149, 104 A.2d 492, 494 (1954); *In re 501 Paxinosa Ave.,* 367 Pa. 340, 345, 80 A.2d 789, 791 (1951).

However, the right of expansion is not unlimited. *Silver v. Zoning Bd. of Adjustment,* 435 Pa. 99, 103, 255 A.2d 506, 507 (1969). In *Silver* we stated that "[t]he contemplated expansion must not be detrimental to the public health, welfare and safety. We have never questioned the right of a municipality to impose reasonable restrictions on the expansion of a nonconforming use." *Id.* at 102, 255 A.2d at 507.

Moreover, if the portion of land at issue was not used in furtherance of the nonconforming use prior to the ordinance rendering the use nonconforming, then the appropriate remedy would be to obtain a variance. *See Mack Zoning Appeal,* 384 Pa. 586, 122 A.2d 48 (1956); *In re Pierce Appeal,* 384 Pa.

100, 119 A.2d 506 (1956).[5] The requirements to obtain a variance are embodied in section 912 of the Pennsylvania Municipalities Planning Code, 53 Pa.C.S. § 10912.[6] Those requirements are:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood, or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue. . . .

5. Appellant also argues that the parking lot may be permitted as a natural expansion of a nonconforming use not requiring a variance. However, Appellant's argument is meritless since we find that Appellant must obtain a variance where the portion of the land at issue was not used in furtherance of the nonconforming use.

6. We note that section 912 of the Pennsylvania Municipalities Planning Code, *as amended*, 53 P.S. § 10912, was repealed by Act of Dec. 21, 1988, P.S. 1329, No. 170, § 90, reenacted by Act of Dec. 21, 1988, P.L. 1329, No. 170, § 189, and is now contained, without substantive change, in section 910.2 of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10910.2. However, section 912 of the Pennsylvania Municipalities Planning Code, *as amended*, governs this case since the matter arose under that section.

53 P.S. § 10912. As is evident from the record, the parties' briefs and the Commonwealth Court's judgment, the pertinent question in this case is whether an unnecessary hardship exists such that a variance should be granted.

In *Mack Zoning Appeal,* 384 Pa. 586, 122 A.2d 48 (1956), this Court recognized

> that the expansion of a nonconforming use does not in and of itself entitle the owner to erect structures on a portion of his land not previously occupied by his business enterprise, but it does constitute an *important factor* in the consideration of the question whether a variance should be granted for that purpose.

*Id.* at 589, 122 A.2d at 50 (emphasis added). This Court did not regard the request to expand a nonconforming use, without more, enough to constitute an unnecessary hardship. However, the Court did consider it an important factor and concluded:

> [W]hile it was incumbent upon them to establish that a refusal of the permit to build this one-room addition would result in an unnecessary hardship and would not be contrary to the public interest, they clearly met those conditions. Not only would such refusal prevent them from taking advantage of the *normal increase of their business,* but it would not serve any useful purpose whatever.

*Id.* (emphasis added). As this Court in *Mack Zoning Appeal* made clear, frustration of the normal increase of the business coupled with a lack of public detriment is sufficient to constitute an unnecessary hardship.

In the instant matter, the apartment complex was built at a time when the automobile was not a large part of ordinary, daily life. Today, however, automobiles are increasingly necessary. Thus, denying the variance to increase parking would necessarily frustrate the normal increase of the business where the daily need for automobiles has increased. The normal increase of the business, i.e. modernization and expansion, depends on the availability of sufficient parking. R.R. 189a.

The Board found that the shortage of parking has a major adverse effect on Properties' facility, which prevents its use or modernization. The Board accepted Properties' testimony to the effect that additional parking is necessary as part of any modernization and proper operation of these apartments. The Board's findings were supported by Properties' testimony that modernized apartments of the type which it proposes in its current plans require the provision of about 1.5 parking spaces per unit. R.R. 140a, 177a. Properties also testified that presently there is a lack of adequate parking to meet today's standards in the market place. R.R. 45a, 55–6a. Thus, there was substantial evidence supporting the finding that additional parking, which is nonconforming, is necessary to modernize the apartment complex. Properties, therefore, established that refusal of the variance to build additional parking in the R–2 Single Family Residential District would frustrate the normal increase of the business and result in an unnecessary hardship.

Additionally, the Board found that granting the variance would not be injurious to the public interest. The Board stated that the parking will have some impact on Windsor Lane, but the apartments have a long established access to that lane so that the effect of the variance will not be sufficient to warrant a denial under the criteria of the Lower Merion Code. Moreover, the evidence showed that a variance would have the effect of reducing the existing nonconforming use and limiting the overflow parking on Windsor Lane, which both parties agree is desirable. R.R. 42–3a, 156a.

Clearly, the Board did not abuse its discretion where the evidence shows that denying Properties a variance would prevent Properties from taking advantage of the normal increase of the business and would not serve any useful purpose. Moreover, as the Board found and the evidence supports, granting the variance will not cause a detriment to the public. Therefore, since the Board's findings are supported by substantial evidence, we conclude that the Board did not abuse its discretion.

Appellees also argue that the Board committed an error of law by granting the alternative variance to Properties. They allege that the Board utilized an improper legal standard in determining whether Properties was entitled to the variance.

The Board found that:

1. A shortage of parking has a major adverse effect on an existing facility which is nonconforming in that respect, preventing its use or modernization;

2. The problem is not self-created and the level of relief granted is the minimum which will alleviate the hardship, and that

3. Favorable action will not be injurious to the public interest.

*In re Philadelphia Properties, Inc.,* No. 2975, slip op. at 6, (Zoning Hearing Board of Lower Merion Township, Feb. 9, 1980). The Board admitted that these findings "do not cover the full range of variance standards," but justified granting the variance without the finding of all five criteria by relying on the first paragraph of section 912 of the Municipalities Planning Code, 53 P.S. § 10912, and stating that "the traditional standards apply only 'where relevant in a given case.'"[7]

In this matter, the Board did not make a finding with regard to section 912(1), unique physical circumstances or conditions. The Board did make what it thought were relevant findings in this given case, that is: a case where denial of a variance to an apartment complex that is nonconforming as to parking would frustrate the normal increase and modernization of the business. However, in order to make a finding of unnecessary hardship, a consideration of the physical circumstances or conditions must be made. *See* 53 P.S. § 10912(1). Therefore, the Board erred when it failed to make a finding with regard to section 912(1), unique physical circumstances or conditions. This Court has clearly stated the high standards of proof necessary to obtain a variance. *See*

7. Pursuant to 53 P.S. § 10912, the Board may grant a variance, provided that all the findings, 53 P.S. § 10912(1) to (5), are made *where relevant in a given case.*

208

*Valley View Civic Ass'n v. Zoning Bd. of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). This Court has refrained from relaxing the standards for granting of variances in certain circumstances [8] and we refuse to do so today. Although the Board did not abuse its discretion when it determined that an unnecessary hardship existed, the Board committed an error of law when it failed to make a finding under section 912 regarding unique physical circumstances or conditions.

Accordingly, the Commonwealth Court's Order is vacated and the matter is remanded to the Zoning Hearing Board of Lower Merion Township for further proceedings consistent with this opinion.

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the decision of this case.

ZAPPALA and CAPPY, JJ., concur in the result.

---

8. *See, e.g., Beecham Enterprises, Inc. v. Zoning Hearing Bd. of Kennedy Township,* 530 Pa. 272, 278 n. 4, 608 A.2d 1017, 1020 n. 4 (1992).