743 A.2d 995 (1999)
Gary L. CLANTON and Lois J. Clanton, h/w
v.
LONDON GROVE TOWNSHIP ZONING HEARING BOARD and Kevin McLean, Paula McLean, Robert Rubolin, Dolores Rubolin, Edward Satchell, Linda Satchell, Frank Jury, Jane Jury, Thomas Hughes, Deborah Hughes, Michael Murray, Carolyn Murray, Michael DeLeo, Kimberly De-Leo, Brian Hussey, James Ryan, Nancy Ryan and London Grove Township,
London Grove Township, Appellant.
Commonwealth Court of Pennsylvania.
Argued April 13, 1999.
Decided November 18, 1999.
Reargument Denied January 31, 2000.
*996 James H. Thomas, Lancaster, for appellant.
William J. Gallagher, West Chester, for appellees.
Before McGINLEY, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.
FLAHERTY, Judge.
London Grove Township (Township) appeals from an order of the Court of Common Pleas of Chester County (trial court), which reversed the decision of the London Grove Township Zoning Hearing Board (Board) and determined that the use of property owned by Gary L. Clanton and Lois J. Clanton (collectively Clanton) constituted a continuation of a nonconforming use rather than a new use. We affirm.
The facts in this case, as found by the Board, are not in dispute. Clanton is the owner of fourteen acres of land in the Township. At the time of the purchase, the land was zoned Industrial-Commercial. In 1988 Clanton started an excavating business from the property. This business included the storage of equipment on the property including dump trucks, front-end loaders, bulldozers and backhoes. Clanton presently employs eight to ten individuals, who work normal business hours.
In the early 1990's Clanton received a mining permit from the state and began excavating the southern portion of his property known as "the pit." Clanton deposited excess dirt from his excavating jobs into the pit along with spent compost. Clanton also excavated and sold dirt from the pit, which was removed from the property in dump trucks. Clanton mixed the dirt from the pit with compost in front-end loaders, which was then trucked away and sold in bulk.
In March of 1995, Clanton's property was rezoned Residential-Mobile Home. Thus, Clanton's use of the property became nonconforming. In January 1997, Clanton began to dry and bag the topsoil. Nutra Soils, Inc., a Pennsylvania corporation of which Clanton is one of five owners, undertook this process. Nutra Soils, Inc. operates under an informal lease whereby Clanton receives a monthly rental fee for the use of his property.
The bagging operation entails the placement of a dryer, which is ten feet in diameter and forty feet long, and other equipment on the property.[1] Approximately 75% of the soil used in this operation is obtained from Clanton's adjacent neighbor's properties and the balance is obtained from the pit.[2] The bagged topsoil is then removed from the property by trucks.
*997 A maximum of 15,000 bags of topsoil is produced per day. In 1997, one million forty pound bags of topsoil were produced. Nutra Soils Inc. employs eight to ten individuals, none of whom work for Clanton's excavation business. Generally, work begins at 5:00 a.m. and finishes at dark.
In April of 1997, the Township's zoning enforcement officer issued a notice of violation to Clanton citing the "bagging operation, noncoal mining operation and drying operation for spent mushroom compost" as having been illegally begun without application or permits from the Township. Clanton appealed the notice to the Board and also sought a variance or special exception. After hearings, the Board voted to uphold the notice of violation and denied Clanton's request for a variance or special exception. The Board concluded that Clanton's use of the property for the production of topsoil was not a use in the form evident in March of 1995, the date of the adoption of the Township's zoning ordinance. The Board also concluded that the drying and bagging of the topsoil constituted a new use in violation of the Township's ordinance.
On appeal, the trial court reversed. The trial court concluded that the fundamental use of the property had not changed, just the instrumentality, i.e., loose bulk sales of soil versus forty pound bags of soil. Thereafter, this appeal by the Township followed.
On appeal, the Township argues that the trial court erred as a matter of law in concluding that the operation constituted a continuation of a nonconforming use rather than an impermissible new use of the property. We disagree.
The facts as found by the Board, indicate that prior to the adoption of the current zoning ordinance in March of 1995, besides an excavation business, Clanton also conducted a topsoil business from his property. The topsoil business included the transportation of dirt onto his property from his excavation jobs and also included the excavation of dirt from the pit located on the property. The dirt was then mixed with spent compost to create the topsoil. The topsoil was then removed from the property in dumptrucks and sold to the public.
As to nonconforming uses Section 2000 of the Township's zoning ordinance provides:
All uses, structures, lots and signs that do not conform to the regulations of the district in which they are located, but were in lawful existence prior to the effective date of this Ordinance shall be known and regarded a [sic] lawful nonconforming.
In addition, Section 2001 of the Ordinance addresses the continuation of lawful, nonconforming uses and provides as follows:
lawful uses, buildings, land or signs existing at the time of adoption of this Ordinance, or authorized by a building permit issued prior thereto may be continued in the form evident at the time of adoption of this Ordinance although such does not conform to the provisions of this Ordinance.
In this case, at the time of the adoption of the Ordinance in March of 1995, Clanton conducted excavation and topsoil businesses from his property. Thus, at the time of the adoption of the Ordinance Clanton's uses became nonconforming. We agree with the trial court that based on the facts as found by the Board, the drying and bagging of the topsoil which commenced in January 1997, constituted an expansion of a nonconforming use rather than a new use.
The owner of a property to which a lawful nonconforming use has attached enjoys a vested property right. Pappas v. Zoning Board of Adjustment, 527 Pa. 149, 589 A.2d 675 (1991). In addition, the natural expansion of a nonconforming use is a constitutional right protected by the due process clause. Silver v. Zoning Board of Adjustment, 435 Pa. 99, 255 A.2d 506 (1969). "[O]nce it has been determined *998 that a nonconforming use is in existence, an overly technical assessment of that use cannot be utilized to stunt its natural development and growth." Township of Chartiers v. William H. Martin, Inc., 518 Pa. 181, 188, 542 A.2d 985, 988 (1988). Nor will a change in instrumentality defeat the purpose or existence of a nonconforming use. Id.
In this case, Clanton has introduced modern technology into his topsoil business and not introduced a new use. Rather, than hauling the topsoil off of his property loose in dump trucks, Clanton is now bagging the topsoil before it is trucked off the premises. Moreover, although 75% of the dirt used to make the topsoil is from Clanton's neighbors, Clanton had in the past before the adoption of the zoning ordinance, brought dirt onto his property for the making of topsoil from other locations in connection with his excavating business. Both pre and post adoption of the zoning ordinance, Clanton mixed the dirt with compost. Although Clanton now dries the topsoil and now bags it before the trucking it off the property, such processing does not constitute a new use. Rather, this is an incorporation of modern technology into the business, which is proper.
Moreover, although Nutra Soils, Inc. rather than Clanton now conducts the topsoil business, such does not constitute a new use as the right to continue a nonconforming use, once established and not abandoned, runs with the land and this right is not confined to any individual or corporation. In re Appeal of Gemstar/Ski Brothers, 574 A.2d 1201 (Pa.Cmwlth.1990).
The case of Gemstar is similar to the facts of this case. In Gemstar, Ski originally conducted a junkyard/auto salvage operation, which was a lawful nonconforming use. From 1946 to 1986, Ski dismantled used cars and sold useable parts while storing nonusable parts. As a result large amount of tires were stored on the property but delivery and storage of tires coming from other places was not part of the operation.
Thereafter, Gemstar, which leased a portion of the property, was organized as a separate corporation by some of the principals in Ski. Gemstar then installed a tire processing and chopping facility, which consisted of cutting up tires into blocks. The accumulation of tires rose from between 100,000 to 200,000 to between 750,000 to 1,000,000 tires.
This court agreed with the trial court that the board improperly determined that the tire operation constituted a new use not incident to the operation of a nonconforming junkyard. We held that the junkyard properly introduced modern technology into their business by instituting the tire processing and chopping facility. Although the number of cars and tires processed through the junkyard increased dramatically, such was a natural progression resulting from the introduction of the modern technology. Also, although, Gemstar rather than Ski operated the tire processing facility on land leased to it by Ski, this court observed that the right to continue a nonconforming use runs with the land.
Similarly in this case, the right to continue the nonconforming use of processing topsoil runs with the land, thus it matters not that Nutra Soils, Inc., rather than Clanton now processes the topsoil. Moreover, although the amount of topsoil created has increased as the result of the drying system and bagging, these are changes in instrumentality which are properly incorporated by a nonconforming use.
Although the Township relies on Thayer v. Lower Milford Township, 16 Pa. Cmwlth. 124, 343 A.2d 92 (1974), that case is distinguishable. In that case the previous owner of a five and one-half acre tract of land repaired farm tractors and automobiles and never kept more than four or five pieces of the equipment on the property. The land was subsequently rezoned residential and sold to Thayer who repaired trailers. Thayer employed twelve men to *999 repair the trailers, which amounted to up to seventy-five at one time. Thayer also expanded the area upon which the trailers were repaired. Rather than just utilizing the east side of the property as the previous owner had done, Thayer also expanded the operation to the west side. This court agreed with the Board and trial court that Thayer's use of the property was not a natural expansion the original use. The fundamental reason that this court denied Thayer's appeal was "because of the devastating impact this business would have on the surrounding area if permitted to continue." Id. at 96. This court observed that the truck trailer repair and storage compound was in the heart of a residential district and that although only five pieces of equipment were previously housed on the property sixty to seventy trailers were now being kept on the property.
In this case as opposed to Thayer, there is no evidence in the record that the topsoil business would have a devastating impact on the neighborhood if it continues to operate. Although truck traffic has increased, this is due to the natural expansion of the topsoil business. Moreover, the business at issue is not in the heart of a residential district. Unlike Thayer, the property is bordered by industrial, mobile home and residential districts.
Accordingly, as the process of creating topsoil is a legitimate expansion of a nonconforming use, the order of the trial court is affirmed.

ORDER
NOW, this 18th day of November, 1999, the order of the Court of Common Pleas of Chester County at No. 97-10391, entered July 23, 1998, is affirmed.
Dissenting opinion by Senior Judge McCLOSKEY.
McCLOSKEY, Senior Judge.
I respectfully dissent. The evidence of record demonstrates that Gary L. Clanton and Lois J. Clanton (collectively Clanton) created an impermissible new use of their property with the establishment of a soil bagging operation on said property in January of 1997.
Previously, Clanton had sold truckloads of soil that he had excavated from his property and/or utilized in his excavation business. In 1997, Clanton began an expansive, commercial soil bagging operation. The soil bagging operation differed from Clanton's previous sale of soil in that: the operation was conducted by Nutra Soils, Inc., a corporation of which Clanton is one of five owners; it operated during more extensive hours; it had its own employees; it utilized soil from neighboring lands; and it required the placement of massive commercial equipment on the property.[1]
Moreover, I disagree with the statement at page seven of the majority opinion that "there is no evidence in the record that the topsoil business would have a devastating impact on the neighborhood if it continues to operate." The evidence of record indicates that Clanton's neighbors began complaining about increased truck traffic, noise, dust, odors and smoke in 1997. The Township's Zoning Hearing Board made such a finding of fact in its decision.
Furthermore, at the time that Clanton purchased the property in December of 1987, the land was zoned Industrial-Commercial. In March of 1995, the land was rezoned Residential-Mobile Home by London Grove Township (Township). Such rezoning indicates that the Township realized that industrial/commercial uses were no longer appropriate in that area of the Township.
*1000 Accordingly, I would have reversed the decision of the Court of Common Pleas of Chester County.
NOTES
[1] To produce the topsoil, soil is mixed with spent mushroom compost, loaded into a hopper which distributes the soil onto a conveyor belt and into the dryer. After the soil exits the dryer it is piled and then placed by front-end loaders into another hopper which carries the soil to a bagging area inside of a building on Clanton's property. The building had been previously used in Clanton's excavating business. (R.R. at 946a-947a.)
[2] Clanton's neighbors, from whom 75% of the soil used is obtained, are co-owners of Nutra Soils, Inc.
[1] The practical effect of the majority opinion is to say that a farmer who grows tomatoes and hauls them off the property for sale can proceed to expand the use of his property into an expansive canning operation. Such expansion represents an impermissible new use of the property.