**[J-80-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| RUTH L. KNEEBONE | : | No. 52 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court at No. 807 |
| | : | C.D. 2019 dated July 9, 2020, |
| | : | Reconsideration Denied August 26, |
| ZONING HEARING BOARD OF THE | : | 2020, Reversing the Order of the |
| TOWNSHIP OF PLAINFIELD AND | : | Northampton County Court of |
| PATRICK LUTZ AND PAMELA LUTZ | : | Common Pleas, Civil Division, at No. |
| | : | C-48-CV-2018-11586 dated June 7, |
| APPEAL OF: PATRICK LUTZ AND | : | 2019. |
| PAMELA LUTZ | : | |
| | : | ARGUED: December 7, 2021 |

**OPINION IN SUPPORT OF AFFIRMANCE**

**JUSTICE MUNDY**                                             **DECIDED: April 28, 2022**

We allowed appeal to consider whether the Commonwealth Court correctly applied its standard of appellate review relative to the grant of a dimensional zoning variance.

Appellants, Patrick and Pamela Lutz ("Homeowners"), own a single-family, detached home on a half-acre lot along Kesslersville Road in Plainfield Township, Northampton County. The property is located in a farm and forest district under the township's zoning code. Single-family dwellings are permitted in that district but, per the zoning code, they are subject to setback requirements – namely, 50 feet for the front and back yards, and 20 feet for the side yards.

Homeowners decided to add onto the back of their home. The design called for an addition to extend to the building envelope in the back – that is, to 50 feet shy of the

rear property line – with a raised, covered deck extending 18 feet into the rear setback area. When Homeowners submitted their plan to the township for approval, the zoning officer sent them written notice that the deck would not be allowed because it intruded into 50-foot setback area. He observed Homeowners could seek relief from the zoning hearing board (the "Board") in the form of a dimensional variance. The officer noted dimensional variances must meet the requirements of the zoning code. *See* Plainfield Twp. Zoning Code § 27-804.5.C. Those requirements are substantively identical to the ones contained in Section 910.2(a) of the Pennsylvania Municipalities Planning Code (the "MPC"),[1] which lists five prerequisites for a variance:

> (a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. . . . The board may grant a variance, provided that all of the following findings are made where relevant in a given case:
>
> > (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
> >
> > (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
> >
> > (3) That such unnecessary hardship has not been created by the appellant.

---

[1] Act of July 31, 1968, P.L. 805, No. 247 (as amended 53 P.S. §§ 10101-11202). The MPC is enabling legislation authorizing municipalities to enact and enforce zoning regulations. *See Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1064 (Pa. 2007); *see also* 53 P.S. § 10105 (relating to the MPC's purposes).

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a).

Homeowners submitted a dimensional-variance application to the Board, indicating their house was built in the 1960s on a non-conforming lot which was not part of any development, and it is adjacent to a large tract of open farmland to the rear with no structures nearby. The Board held hearings in September and October 2018.

At the September hearing, Homeowners appeared, represented by Attorney Gary Asteak. Attorney Asteak recited that the requested variance was for a covered deck attached to the back of the house and encroaching 18 feet into the 50-foot rear yard, thus leaving a 32-foot setback from the rear property line. He presented the testimony of Adam Pooler, the general contractor for the work on the addition and the deck. Mr. Pooler testified that: the half-acre lot was not created by Homeowners, but was a pre-existing lot that would not have been permitted under the current zoning regulations; the land behind the subject property is a farm consisting of 130 acres; given the size of the property and the design of the addition and proposed deck, he cannot construct the deck and still meet the ordinance's setback requirements; and the submitted design represents the minimum size for the deck to be functional as a covered deck, meaning that Homeowners were seeking the minimum variance that would afford the relief they wanted. He also pointed out that Homeowners used to have an above-ground pool and deck within the rear-yard setback area, that these items had been removed, and that the proposed new,

covered deck would not extend as far back as did the pool and the old deck. *See* N.T., Sept. 11, 2018, at 5-11. When asked if construction of the deck would alter the essential character of the neighborhood, Mr. Pooler opined it would improve the neighborhood because the subject property would have enhanced curb appeal, and this would be unlikely to harm the next-door neighbors. *See id.* at 10.

At the October hearing, Attorney Asteak presented a topographical survey with a site plan showing the exact lot dimensions, confirming that the addition to the house is wholly within the building envelope, and reflecting that the proposed deck would intrude about 18 feet into the setback area.[2] These documents also showed that Appellee Ruth Kneebone ("Objector"), Homeowners' next-door neighbor, has a shed located on her property about 19 feet from the rear yard line. *See* N.T. Oct. 4, 2018, at 3-6. The only persons opposed to the variance were Objector and her son Jeffrey. Due to a medical condition, Objector was unable to speak, so Jeffrey spoke on her behalf.

At the September hearing, Jeffrey read into the record a letter written by his mother expressing that: she has lived at her current residence since 1965; she strongly agrees with the 50-foot setback requirement for properties in the farm and forest district; constructing improvements within that area appears intrusive to neighboring property owners; houses in the 1960s were small, whereas now larger homes are being placed on relatively small lots; many residents oppose this practice and prefer open space; and granting the requested variance would change the character of her home and rear yard and set a bad precedent. *See* N.T., Sept. 11, 2018, at 26-28. At the October hearing, Jeffrey testified on his own behalf and repeated many of these sentiments. *See* N.T., Oct. 4, 2018, at 11-15. On cross-examination, Jeffrey acknowledged that his mother

---

[2] In his prefatory remarks to the Board, Attorney Asteak portrayed the addition of living space and a covered deck as "bringing the house into the 21st Century on an existing lot." *Id.* at 4.

owns a shed behind her house which intrudes approximately 31 feet into the rear setback area of her lot, and that a dimensional variance had to be obtained for its construction many years ago. *See id.* at 17, 29-31. However, he described the shed as smaller and less prominent than the construction proposed by Homeowners. *See id.* at 29, 31.

The Board approved the variance by unanimous vote. In its written decision, the Board made a number of factual findings based on the testimony and documents submitted. It observed, initially, that the land immediately behind the subject property is a 130-acre farm, there are no adjacent buildings or dwellings located in that area, and Objector herself has a shed located about 19 feet from the rear of her lot. The Board continued that: in view of the undersized dimensions of the lot in question, compliance with the dimensional requirements for setbacks creates a hardship; although Objector opposed the additions, most of the improvements to which she and her son articulated specific objections are located within the permitted building envelope, and only the deck encroaches into the setback;[3] the structures at issue will be in the center of the property and will meet the zoning ordinance's side-yard setback requirements; the unique physical characteristics – *i.e.*, having open farmland directly behind the property, coupled with the fact that it is a small lot in a farm and forest district – are sufficient to justify relief; and the 18-foot encroachment into the rear-yard setback will not detrimentally impact the surrounding properties or the character of the neighborhood, particularly because, as noted, the property immediately behind the subject property is a large tract of open

---

[3] The Board couched its findings in terms of a deck and a patio intruding into the setback, and the parties' present advocacy is framed in similar terms. The site plan shows the patio as sitting beside the deck and not encroaching any further than the deck into the rear setback area. Objector only took issue with the raised, covered deck, and not the patio, which would be at ground level. *See* N.T., Oct. 4, 2018, at 6. At the hearing, the patio seemed most relevant to an ancillary discussion about the subject property's impervious surface, which is not at issue in this appeal. *See id.* at 9-10.

farmland. *See In re Request for Dimensional Variance*, No. 2018-06, Opinion at 8-9 (Plainfield Twp. Zoning Hearing Bd. Nov. 5, 2018) (Findings of Fact Nos. 51-60).

Objector sought review in the common pleas court, which affirmed based on the record made before the Board. The court noted, initially, that where (as here) it does not take additional evidence, the Board is the sole judge of witness credibility and evidentiary weight, and its decision is reviewed for an abuse of discretion. *See Kneebone v. Plainfield Twp. Zoning Hearing Bd.*, No. C-48-CV-2018-11586, *slip op.* at 5 (C.P. Northampton June 7, 2019). The court elaborated that the Board acts within its discretion so long as its findings are supported by "substantial evidence," meaning, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)).

The court explained, further, that where a dimensional variance is sought the landowner is asking for an adjustment of zoning restrictions so as to use the property in a manner consistent with applicable regulations, and hence, the variance is of lesser moment than when an applicant seeks a use variance – that is, permission to use the property in a manner falling outside such regulations. Thus, the court continued, an assessment of unreasonable hardship is based on a lesser quantum of proof than in the use-variance context and may subsume factors such as: the economic detriment to the applicant if the variance is denied, the financial hardship created by any work necessary to bring the property into strict compliance with zoning requirements, and the characteristics of the surrounding neighborhood. *See id.* at 9-10 (citing and quoting *Hertzberg v. Zoning Bd. of Adjustment of Pittsburgh*, 721 A.2d 43, 47-48, 50 (Pa. 1998)). The court then reviewed the hearing testimony in some detail and held that the Board's findings and determinations, including its ultimate decision to grant the variance, were supported by substantial evidence.

The Commonwealth Court reversed. Like the common pleas court, it recited the standard of judicial review applicable to local zoning board decisions, as well as the premise that a more relaxed administrative assessment applies in the first instance to requests for a dimensional variance than for a use variance. *See Kneebone v. Plainfield Twp. Zoning Hearing Bd.*, No. 807 C.D. 2019, 2020 WL 3866643, at *2-3 & n.2 (Pa. Cmwlth. July 9, 2020) (citing *Hertzberg*, 721 A.2d at 50). It disagreed with the county court, however, on the question of whether substantial evidence supported the Board's conclusion that complying with the dimensional setback requirements imposed a hardship upon Homeowners.

In this respect, the court expressed, initially, that Mr. Pooler's testimony comprised the only evidence of hardship. It acknowledged such testimony supported the concept that the small size of Homeowners' lot, together with the zoning setback requirements, limited Homeowners' use of their property. But it did not consider the testimony adequate to demonstrate the type of hardship needed to justify a dimensional variance because, in the court's view, these constraints only interfered with Homeowners' preferences. *See id.* at *5; *see also id.* at *3 (expressing that "a conflict between dimensional zoning requirements and a landowner's personal preference regarding property use alone does not create a hardship meriting a variance" (citing *Yeager v. Zoning Hearing Bd. of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001))). The court indicated that any hardship arising from difficulties of that nature relate to the person and not the property. *See id.* at *2 ("A variance, whether labeled dimensional or use, is appropriate only where the property, not the person, is subject to hardship." (indirectly citing *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972))).

We allowed further appeal to address the following issue as framed by Homeowners:

Did the Commonwealth Court panel abuse its discretion by using an incorrect standard of appellate review and substitute its judgment for that of the trial court and zoning hearing board in reversing the zoning hearing board's grant of a dimensional variance?

*Kneebone v. Plainfield Twp. Zoning Hearing Bd.*, 256 A.3d 1089, 1090 (Pa. 2021) (*per curiam*) (brackets removed, some capitalization altered).

Initially, we find Homeowners' statement of the issue to be imprecise. Although a local zoning board acts within its discretion when finding unnecessary hardship and in deciding whether to grant a variance, *see Marshall v. City of Phila.*, 97 A.3d 323, 333 (Pa. 2014); *Upper Leacock Twp. Supervisors v. Upper Leacock Twp. Zoning Hearing Bd.*, 393 A.2d 5, 7-8 (Pa. 1978), appellate review is not a discretionary exercise: it is conducted according to standards set forth by law regarding the degree of deference to be accorded to the judicial or administrative body which, in the first instance, renders the underlying adjudication. *See In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).[4] It is helpful for litigants to keep this distinction in mind when framing issues and formulating their advocacy, because review for an abuse of discretion is substantially more deferential than review for legal error. *See In re Doe*, 33 A.3d 615, 624 (Pa. 2011). *See generally* Francis M. Allegra, *Section 482: Mapping the Contours of the Abuse of Discretion Standard of Judicial Review*, 13 VA. TAX REV. 423, 462-73 (1994) (describing various standards of

---

[4] Sometimes appellate review involves a mix of standards. For example, trial court decisions to admit or exclude evidence are reviewed for an abuse of discretion, *see, e.g.*, *Commonwealth v. Jordan*, 65 A.3d 318, 325 (Pa. 2013), but to the extent the ruling is based on the trial court's interpretation of legal authority – such as a rule of evidence, a statute, or the Constitution – that aspect of the decision is reviewed *de novo*. This type of review can be described within an abuse-of-discretion framework detailing that one way discretion can be abused is through a misapplication of the law. *See Commonwealth v. Rogers*, 250 A.3d 1209, 1215 (Pa. 2021) (recounting that the trial court excluded evidence per Pennsylvania's rape shield law, noting its decision would be reviewed for an abuse of discretion, and specifying the defendant's contention that that statute was misapplied raises an issue of law subject to *de novo* review).

judicial review). Where, as here, the litigant's central contention is that the intermediate court utilized an incorrect standard in reviewing a discretionary decision, the claim is, in its central aspect, one of legal error. It thus implicates *de novo* review of the analysis of that tribunal, while also taking into account the necessity for deferential review of the decision of the agency or court of original jurisdiction. *See, e.g., In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).[5] With that said, our consideration is not impeded in the present matter as it is clear that the substance of Homeowners' complaint is that the Commonwealth Court overstepped its bounds by failing to accord sufficient deference to the Board's determination that they suffered a hardship sufficient to justify relief in the form of a dimensional variance.

To the extent the Board, as factfinder hearing the evidence firsthand, assessed witness credibility or resolved conflicts in the testimony, we do not supplant those determinations. *See Nettleton v. Zoning Bd. of Adjustment of Pittsburgh*, 828 A.2d 1033, 1041 n.10 (Pa. 2003). *See generally Commonwealth v. Johnson*, 231 A.3d 807, 818 & n.7 (Pa. 2020). As well, although Homeowners bore the burden of proof before the Board with regard to the prerequisites for a variance, *see Appeal of Bilotta*, 270 A.2d 619, 620 (Pa. 1970), at the appellate level we review the record in the light most favorable to Homeowners, as the prevailing party before the agency, and give them the benefit of all reasonable inferences arising from the proofs adduced. *See Cinram Mfg., Inc. v. W.C.A.B. (Hill)*, 975 A.2d 577, 583 (Pa. 2009); *Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 473 (Pa. Cmwlth. 2021).

As discussed, the Board specifically found, *inter alia*, that the lot was small for the district it was in, and that in light of its undersized dimensions, strict compliance with the

---

[5] Where the common pleas court takes additional evidence in a zoning appeal, the test is whether that court, rather than the zoning board, committed an abuse of discretion or error of law. *See Appeal of Volpe*, 121 A.2d 97, 100 (Pa. 1956).

rear-yard setback requirement would create an unnecessary hardship; most of the improvements opposed by Objector were located within the permitted building envelope; the proposed deck will be in the center of the property and comply with all prescribed side-yard distances; and the encroachment into the backyard will not have an adverse effect upon the surrounding properties or the character of the neighborhood. As to the size of the lot and the open character of the farm behind it, the placement and dimensions of the deck, the main structure's inclusion within the building envelope, the compliance with side-yard requirements, and the like, the Board's findings were supported by the testimony and exhibits offered by Homeowners. There is no factual controversy concerning these items. The dispute centers primarily on the question of unnecessary hardship.

Homeowners emphasize the deferential nature of review which applies to zoning board decisions, together with the *Hertzberg* precept that the litmus for assessing hardship for purposes of entitlement to a dimensional variance is relaxed somewhat as compared with a use variance. They explain an appellate court should only overturn a zoning board's decision where the board abused its discretion or committed legal error. Homeowners recount the various findings made by the Board, including that their lot is undersized for the district and there is open farmland behind them. They maintain these findings are based on substantial evidence which, when viewed as a whole in a light favorable to themselves as the prevailing party, adequately supports the relief granted – and that in concluding to the contrary the intermediate court interposed its own view of the evidence instead of deferring to the findings made by the Board.

Homeowners are correct in highlighting that appellate review in the present context is deferential and limited to whether the Board's findings are supported by substantial evidence and its decision is free from legal error. *See Peirce v. Zoning Bd. of Adjustment*

*of Upper Dublin Twp.*, 189 A.2d 138, 141 (Pa. 1963). Still, as Homeowners acknowledge, any assessment of substantial evidence requires an independent record review, as otherwise a reviewing court could not gauge whether a reasonable mind might accept the proofs as adequate to support the findings reached. *See* Brief for Appellants at 13; *accord* Brief for Appellee at 6. To the degree, moreover, that Homeowners suggest the Commonwealth Court's action was improper because it simply disagreed with the judgment of the county court, the argument is not well taken because the intermediate court's disagreement pertained to whether substantial evidence supported the Board's findings, which was well within its appellate standard. *See Kneebone*, 2020 WL 3866643, at *5 ("[W]e do not agree with the Trial Court's assessment that substantial evidence supports the Board's conclusions."). Finally, a careful review of the Commonwealth Court's opinion does not disclose any instance in which that tribunal sought to displace the Board's credibility determinations or its resolution of conflicting evidence.[6] Accordingly, we conclude that the Commonwealth Court utilized the correct standard in conducting its review of the Board's decision. And for the following reasons, we agree with its ultimate determination that, even when reviewed deferentially, the Board's judgment cannot be sustained.[7]

---

[6] Contrary to Justice Wecht's suggestion, *see* Opinion in Support of Dismissal ("OISD") at 4, the Commonwealth Court did not dispute the Board's characterization of the lot as "undersized," *see Kneebone*, 2020 WL 3866643, at *5, and we likewise have no occasion to disagree with that adjective. "Undersized," however, is a colloquial description in the present context; it is not a term used by the MPC, and as such, it carries no legal significance standing alone. The crucial finding on which there was disagreement was whether the size of the lot, combined with the applicable zoning requirements, resulted in an unnecessary hardship. *Compare id. with* Finding of Fact No. 55. This topic is addressed below.

[7] It may be argued that a strict reading of the question framed by Homeowners does not encompass the intermediate court's *application* of the review standard, so long as that court correctly identified what it was looking for, *i.e.*, an abuse of discretion or error of law.

As we read the Board's decision, it was focused largely on the premise, which we accept as supported by substantial evidence, that the variance would not have an adverse impact upon the adjacent properties or the neighborhood as a whole, particularly as the subject property backs up to open farmland with few if any structures nearby. *See* Findings of Fact Nos. 56, 58, 60. That is a valid consideration, but it implicates only one of the variance prerequisites listed in the MPC and the local zoning law. *See* 53 P.S. § 10910.2(a)(4) (specifying that the variance may not "alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare"); Plainfield Twp. Zoning Code § 27-804.5.C(2)(d) (same). As quoted above, Section 910.2(a) of the MPC, as well as the counterpart provision of the local zoning code, contain four additional factors all relating in one way or another to the existence of an unnecessary hardship.[8] Thus, beyond the effect on adjacent properties and the neighborhood, the presence and nature of the claimed hardship are critical to

In the deferential-review context, however, there is little distinction between failing to afford deference while citing the right standard and doing the same pursuant to a wrong one. Further, it would make little sense for us to affirm the judgment of the intermediate court if we were convinced that the Board did not abuse its discretion, on the sole basis that the Commonwealth Court nominally undertook deferential review. This is so particularly where, as here, the parties have briefed the question. *See Lomas v. Kravitz*, 170 A.3d 380, 388 n.10 (Pa. 2017).

[8] These factors require an unnecessary hardship that: (i) stems from the unique physical characteristics of the property which, when combined with the zoning regulations, make it particularly difficult to develop the property in conformity with those regulations; (ii) makes it so that there is no possibility the property can be developed in conformity with the zoning ordinance, and hence, a variance is needed for the reasonable use of the property; (iii) was not created by the applicant; and (iv) would not be alleviated by a variance appreciably more modest in extent than the one requested. *See* 53 P.S. § 10910.2(a)(1), (2), (3), (5); Plainfield Twp. Zoning Code § 27-804.5.C(2)(a), (b), (c), (e).

whether a variance should be granted. *See Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1065 (Pa. 2007) (explaining the party seeking a variance must show "(1) unnecessary hardship will result if the variance is denied, and (2) the proposed use will not be contrary to the public interest" (internal quotation marks and citation omitted)).

Initially, we recognize that there is always a tension between the exercise of the state's police powers in the form of land-use restrictions in the public interest, and individual property rights as guaranteed by the constitution.[9] We are also aware that the way these competing interests are balanced in practice can be substantially influenced by the nature of the hardship which must be demonstrated as a precondition for a zoning variance. In light of this reality, courts have at times shifted between strict and lenient standards in response to how their interpretation of the statutory hardship requirement has been applied over time. *See, e.g.*, *Simplex Techs. v. Town of Newington*, 766 A.2d 713, 717 (N.H. 2001) (moving to a comparatively lenient standard).

This Court in particular has rejected an overly strict construction, both in use-variance disputes, *see Allegheny W. Civic Council v. Zoning Bd. of Adjustment of Pittsburgh*, 689 A.2d 225, 228 (Pa. 1997) (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 641-42 (Pa. 1983)); *Halberstadt v. Borough of Nazareth*, 687 A.2d 371, 373 (Pa. 1997), and in dimension-variance cases, *see Hertzberg*, 721 A.2d at 50. For purposes of the present appeal, we need not outline the exact contours of the unnecessary-hardship prerequisite as they apply to a situation like the one under review; but we do believe that, to give meaning to the statutory language appearing in the MPC, property owners must make some showing beyond that their proposed use is reasonable

---

[9] Property rights are guaranteed by several constitutional provisions, including the Declaration of Rights, *see* PA. CONST. art. I, § 1, the due process requirement, *see* U.S. CONST. amend. XIV, and the prohibition on uncompensated takings, *see* U.S. CONST. amend. V; PA. CONST. art. I, § 10.

and they cannot build according to their preferences without violating the zoning law. *Cf. Krummenacher v. City of Minnetonka*, 783 N.W.2d 721, 731 n.13 (Minn. 2010) (explaining that many jurisdictions with a statutory unnecessary-hardship predicate "require that the variance applicant establish real hardship if the variance is denied rather than simply requiring that the applicant show the reasonableness of the proposed use").

The Board, notably, did not address the statutory elements relating to hardship, nor did it acknowledge or draw upon any judicially-expounded standard regarding what must be proved to establish unnecessary hardship under the MPC. It opted, instead, to articulate a single, generalized finding that, "due to the undersized dimensions of the lot, compliance with the dimensional requirements for setbacks creates a hardship relative to the property." Finding of Fact No. 55. The Board's failure to elaborate on the nature and genesis of the hardship is a material omission because this Court has held, in light of the statutory language, that "the hardship must truly be an 'unnecessary' one" unique or peculiar to the property, "and not simply a 'mere' hardship." *Larsen v. Zoning Bd. of Adjustment of Pittsburgh*, 672 A.2d 286, 290 (Pa. 1996); *accord McLean v. Zoning Bd. of Adjustment of Crafton*, 185 A.2d 533, 536 (Pa. 1962); *Richman v. Phila. Zoning Bd. of Adjustment*, 137 A.2d 280, 284 (Pa. 1958).

As we review the record, the only person to testify for Homeowners was Mr. Pooler, Homeowners' general contractor. His testimony established that, due to the plans for the addition, Homeowners cannot build both the addition *and* a covered deck behind their house without violating the zoning ordinance. But he did not explain why putting Homeowners to a choice between those two options causes them unnecessary hardship, nor did he provide any other testimony concerning the existence of a hardship. We can understand that a homeowner may *prefer* both of these items, but this does not constitute the kind of "unnecessary hardship" contemplated by the MPC or this Court's decisions

applying that statute. *See Kneebone*, 2020 WL 3866643, at *5 ("While Pooler's testimony evidences [Homeowners'] preference to build a deck of a certain size, it does not represent substantial evidence of a hardship requiring a variance[.]").[10]

The question of unnecessary hardship was addressed by this Court in a case with facts nearly identical to those of the present dispute. In *Larsen*, the property owners purchased a single-family house and later built an addition onto the back of it. They then wanted to build a raised deck attached to the rear of their house so their minor child would have a place to play, as the backyard sloped steeply downward toward a river. Due to the addition, however, the deck would intrude into the rear-yard setback. The local zoning board granted a variance and the common pleas court affirmed. After the Commonwealth Court reversed, the property owners appealed to this Court claiming the intermediate court had exceeded its scope of review. *See id.* at 287-88. This Court held that the board had erred by failing to consider the legislatively-imposed prerequisites to the grant of a variance, and moreover, there was insufficient evidence of unnecessary hardship. *See id.* at 289-90. The Court stated:

---

[10] Homeowners' attorney, as noted, expressed that the proposed improvements, including the covered deck, will serve to update the house to 21st Century standards. *See supra* note 2. That may be a laudable goal, but it does not imply the kind of hardship which justifies relief from the zoning code. Rather, it suggests that the code might benefit from amendment, which is a task for the township's governing body.

Separately, the Board made two other findings that do not implicate the factors set forth in the zoning ordinance. First, it stressed that Objector had a shed in her own rear-yard setback area. *See* Finding of Fact No. 52. Absent discrimination (which has not been alleged), this is an equitable concern, but it is not directly relevant under the governing statutory framework. *See Richman*, 137 A.2d at 284; *Vito v. Zoning Hearing Bd. of Whitehall*, 458 A.2d 620, 621 (Pa. Cmwlth. 1983). Second, the Board noted most of the improvements Objector complained about are contained within the building envelope allowed by the zoning law. *See* Finding of Fact No. 57. That, too, is immaterial as the question before the Board was whether the zoning code's variance prerequisites were satisfied in relation to the portion of the site plan intruding into the setback area.

> Here, the Board found that appellants would suffer an "unnecessary hardship" from a denial of the variance because they would be denied the reasonable use of their land if they could not provide a play area for their child. However, the mere desire to provide more room for a family member's enjoyment fails to constitute the type of "unnecessary hardship" required by the law of this Commonwealth.

*Id.* at 290 (citing *Appeal of Kline*, 148 A.2d 915, 916 (Pa. 1959) (where the homeowner who suffered from hay fever and asthma wanted to create more living space by enclosing a porch, holding that the circumstances did not reflect the type of hardship contemplated by the zoning law)).

Instantly, to the extent the Board considered the subject property to suffer from a unique hardship due to its small size, we make two observations. First, any such reading of the Board's findings is problematic because the only finding which mentions uniqueness does not expressly connect it with hardship. *See* Finding of Fact No. 59 ("The Board finds that the unique physical characteristics of having open farmland directly behind the property, coupled with the fact that the lot in question is a small lot of record in the Farm and Forest District, are sufficient unique characteristics to justify relief."). Second, and more important, *Larsen*'s focus was on whether being denied the ability to have both an addition and a back deck amounted to a hardship for purposes of the MPC. Its holding was not directly tied to whether the subject lot's size was uniquely small for the district it was in.[11]

---

[11] Notably, *Larsen* also clarified that a condition that affects even "a small portion of a district is not sufficiently unique to warrant a variance, but rather should be remedied by re-zoning." *Larsen*, 672 A.2d at 291 (citing *English v. Zoning Bd. of Adjustment of Norristown*, 148 A.2d 912, 914 (Pa. 1959); *Walter v. Zoning Bd. of Adjustment*, 263 A.2d 123, 126 (Pa. 1970)); *cf. Halberstadt v. Borough of Nazareth*, 687 A.2d 371, 373 (Pa. 1997) ("A neighborhood affected by a general hardship should be rezoned.").

While we need not read the statutory "uniqueness" qualifier in its most literal or restrictive sense, *see* 53 P.S. § 10603.1 (providing any ambiguity in the text of local zoning laws is

Justice Wecht interprets our reliance on *Larsen* as amounting to an implicit holding that a lot's comparatively small size due to prior zoning regulations can never, as a matter of law, constitute a hardship. *See* OISD at 4-5. He criticizes this position on two grounds. First, he notes under *Hertzberg*, which post-dated *Larsen*, a lesser quantum of proof is needed to establish hardship in dimensional-variance cases, and he describes our analysis as incomplete without considering the change effectuated by that decision. *Id.* at 5. Second, Justice Wecht suggests this case may be distinguished from *Larsen* on the basis that the lot here is "constrained by a bygone zoning scheme" and as a consequence, compliance with the existing setback requirements may create a hardship here where it did not in *Larsen*. *Id.* at 6. In this respect, he acknowledges a hardship cannot be deemed to arise from "conditions generally created by the provisions of the zoning ordinance," 53 P.S. §10910.2(a)(1), but he posits the statutory phrase "the zoning ordinance" may signify the current one and not include circumstances or conditions created by prior versions of the zoning code. OISD at 6. He therefore discerns a novel issue worthy of this Court's review in a case where it has been raised and preserved, namely, whether a finding that a lot is "undersized" due to a prior zoning code can ever support a finding of unnecessary hardship. *See id.* at 7 n.4.

to be resolved in favor of the property owner); *Bakerstown Container Corp. v. Richland Twp.*, 500 A.2d 420, 421-22 (Pa. 1985) (same); *see also Hunt v. Zoning Hearing Bd. of Conewago Twp.*, 61 A.3d 380, 384 n.8 (Pa. Cmwlth. 2013) (observing the uniqueness requirement is substantially relaxed where the property owner is denied any reasonable use by an unduly restrictive ordinance), this is potentially relevant because, while the property is smaller than presently allowed for the district, there is no evidence it is unique in this regard, and an aerial photo included with the architect's drawing that Homeowners submitted to the township discloses a number of other similarly-sized properties along Homeowners' side of Kesslersville Road. *See also* N.T., Oct. 4, 2018, at 12 (reflecting uncontradicted testimony, consistent with the aerial photo, indicating the presence of several half-acre lots in the area). With that said, nothing in this opinion should be construed as precluding relief where a new hardship affecting multiple properties is created by some significant change in the neighborhood.

We have acknowledged that, post-*Hertzberg*, a relaxed standard of proof is applied in assessing whether an unnecessary hardship exists. With that said, there must still be *some* evidence of hardship, and we believe it would stretch the concept of relaxation beyond the breaking point to affirm such a finding on the present record. Notably, the OISD does not hazard even a suggestion of what it might cull from the record to sustain a finding of hardship under *Hertzberg* leniency.[12] And while the OISD's proposed issue of law may be worth considering at the appropriate juncture, it is hard to see what relevance it has to the present controversy. Contrary to the OISD's suggestion, Homeowners do not raise that specific question, *see* OISD at 6 (referring to "Lutz's novel argument"); *id.* at 7 (same), which is readily understandable: the only aspect of the prior zoning regulations that has been mentioned by any party or tribunal in this matter is the fact that the lot size conformed with that ordinance – and there is no suggestion the setback requirements were different under the ordinance in effect when the lot was created and when Homeowners purchased it than they are now.

Even assuming, *arguendo*, that not having a raised, covered deck of the size proposed by Homeowners amounts to an unnecessary hardship, and that it can be considered unique, one of the most conspicuous omissions by the Board was on the question of whether the hardship was self-created. *See* 53 P.S. § 10910.2(a)(3) (setting forth as an independent requirement for a variance that the hardship was not self-

---

[12] As discussed below, the evidentiary record created by Homeowners established two essential points: (a) building the deck would not significantly affect the surrounding area because the subject property backs up to open farmland; and (b) Homeowners cannot build both an addition and a raised, covered deck without intruding into the setback area. We are not aware of any authority indicating these factors, without more, can support the finding of an unnecessary hardship even under a lenient evidentiary standard. *Cf., e.g.*, *Weinstein v. Zoning Bd. of Appeals of Highland Park*, 727 N.E.2d 655, 658 (Ill. App. Ct. 2000) (granting a variance to construct an addition intruding into the setback area where the lot was small for the neighborhood *and* the home was functionally obsolete).

created); Plainfield Twp. Zoning Code § 27-804.5.C(2)(c) (same); *POA Co. v. Findlay Twp. Zoning Hearing Bd.*, 713 A.2d 70, 74 (Pa. 1998) (same). *Compare Daley v. Zoning Hearing Bd. of Upper Moreland Twp.*, 770 A.2d 815, 820 (Pa. Cmwlth. 2001) (affirming the grant of a variance for additional parking where the need for such parking to make reasonable use of the property was created by changes in the surrounding neighborhood), *with Ken-Med Assocs. v. Bd. of Supervisors of Kennedy Twp.*, 900 A.2d 460, 466-67 (Pa. Cmwlth. 2006) (denying a variance to allow for more parking where the need for such parking was created by, *inter alia*, the landowner's own decision to add more offices to the building). The record reflects that the house already on the lot is two stories with a 30-by-60 footprint, and that Homeowners constitute a family of four who have lived there for a number of years. *See* N.T., Sept. 11, 2018, at 6; N.T., Oct. 4, 2018, at 15. It is undisputed that without the addition, the deck would not extend into the rear setback area,[13] and there were no proofs that the addition was necessary to a reasonable use of the home. *See generally* N.T., Oct. 4, 2018, at 15 (reflecting Mr. Pooler's testimony that Homeowners comprise a family of four and the addition does not include additional bedrooms). Thus, Homeowners offered no evidence to carry their burden with respect to the third statutory prerequisite for a variance – that the hardship was not self-created. *Accord Larsen*, 672 A.2d at 291 (indicating the applicants created their own hardship by first building an addition onto their house, thereby rendering it impossible to build a deck that did not intrude into the rear setback area); Brief for Appellee at 17 (concluding that the fact Homeowners cannot "put all these structures within the building envelope is, in fact, a self-created hardship"). *See generally Sweeney v. Zoning Hearing Bd. of Lower Merion Twp.*, 626 A.2d 1147, 1152-52 (Pa. 1993) (finding that the zoning board erred

---

[13] The addition is designed to extend 26 feet toward the rear property line, *see* N.T., Sept. 11, 2018, at 6, whereas the deck, including its ingress/egress stairway, would only extend around 18 feet in that direction.

where it made what it believed to be relevant findings but omitted any finding as to one of the MPC's enumerated prerequisites for a variance).

We have little doubt that municipal zoning boards are better positioned than reviewing courts to assess local conditions and make reasoned judgments about when circumstances prevailing in their area, combined with strict adherence to local zoning regulations, may give rise to an unnecessary hardship. That is one of the main reasons judicial review of such judgments is deferential. At the same time, a variance by nature authorizes actions inconsistent with legislative restrictions on land use.[14] As a consequence, any such authorization, while allowed by law, must be accomplished in compliance with standards set forth by law. It is at least one function of judicial review to ensure that the local agency's decisional process comports with those standards. Our present review discloses that the Board erred by not predicating the variance on satisfaction of the prerequisites set forth by the MPC and the Plainfield Township Zoning Code, and that to the extent it found unnecessary hardship, such finding was not based upon substantial evidence.

In sum, we conclude that the Commonwealth Court applied the correct standard of review, and that the Zoning Hearing Board's adjudication granting Homeowners a dimensional variance cannot be sustained.

Justices Todd and Donohue join this opinion in support of affirmance.

---

[14] *Cf. Huntley & Huntley, Inc. v. Borough Council of Oakmont*, 964 A.2d 855, 866 (Pa. 2009) (explaining that "the MPC's authorization of local zoning laws is provided in recognition of the unique expertise of municipal governing bodies to designate where different uses should be permitted in a manner that accounts for the community's development objectives, its character, and the 'suitabilities and special nature of particular parts of the community'" (quoting 53 P.S. § 10603(a))).