# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re:  Appeal of Mount Corporation : 
from the Decision of the Zoning : 
Hearing Board of Bensalem Township : 
dated August 8, 2022 :  No. 373 C.D. 2023
 :  Submitted:  November 7, 2024
Appeal of:  Mount Corporation :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
        HONORABLE LORI A. DUMAS, Judge
        HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                    **FILED:  December 20, 2024**


Mount Corporation (Mount) appeals from the order entered in the Court of Common Pleas of Bucks County (trial court), which affirmed the decision by the Bensalem Township (Township) Zoning Hearing Board (Board) (collectively, Appellees).  Mount contends that the trial court erred by affirming the Board's denial of its application for a variance under the Township's zoning ordinance.  We affirm.

## I. BACKGROUND[1]

Mount owns a 3.3-acre improved property, which has a warehouse and associated parking and loading areas.  Mount's property is located within the Township's light industrial zoning district and natural resource protection overlay district.[2]  The overlay district essentially requires that the property be at least 50%

---

[1] We state the facts as presented by the Board and trial court, which we view in the light most favorable to the prevailing party.  *See Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 583 (Pa. 2009).  The Board admitted into evidence several exhibits, which were not transmitted to this Court.

[2] "An overlay district creates a framework for conservation or development allowing for a new type of development or imposing restrictions that is superimposed over the zoning districts

woodlands. The ordinance defines "woodland" as at least one acre of wooded land where (1) the largest trees measure a particular diameter; or (2) a grove of trees fulfills certain other criteria.

In 2020, during the pandemic, Mount hired landscapers, who removed "145.6" trees covering almost an acre of land. This resulted in the property being comprised of less than 50% woodlands. At some point, the Township was alerted to the landscaping and directed Mount to stop work. The Township reviewed the matter and issued a retroactive land alteration permit—not a variance—authorizing the tree removal.[3]

In 2021, Mount applied to the Board for dimensional variances to build an addition to the existing warehouse. Specifically, Mount requested relief under sections of the ordinance that addressed stormwater drainage and steep slopes. Mount's application omitted any discussion of the trees and did not request a variance from the ordinance's 50% woodlands requirement. Following hearings, a 3-2 majority of the Board granted Mount's application, reasoning that Mount did not create any hardship and the requested variances would not alter the neighborhood's

on all or part of a municipality. The purpose of an overlay district is to create specific and targeted provisions that conserve natural resources or realize development objectives without unduly disturbing the expectations created by the existing zoning ordinance. In other words, overlay districts supplement existing zoning districts, [but] they do not supersede them either in fact or in practice." *Protect PT v. Penn Twp. Zoning Hr'g Bd.*, 220 A.3d 1174, 1187 (Pa. Cmwlth. 2019) (cleaned up).

[3] The parties and record do not define a "land alteration permit." The ordinance refers to a "land alteration permit" under Ordinance 212 of the Bensalem Township Code, which was not transmitted to this Court as part of the record. Bensalem Twp. Ordinance § 232-59 (July 3, 2024) ("No grading shall be undertaken prior to the granting of necessary land alteration permit pursuant to Ordinance 212 of the Bensalem Township Code."). An entirely different chapter of the Bensalem Township Ordinance, however, also provides a process for obtaining a permit to alter the land. *See, e.g.*, Bensalem Twp. Ordinance § 103-23 ("Applications for alteration of land utilized wholly or partially for nonresidential purposes . . . shall be issued . . . subject to satisfaction of the requirements of this article and a recommendation from the Township Engineer . . . .").

character. The Board noted that Mount still had to comply with the rest of the Township's zoning ordinance.

Mount then applied for the appropriate land development permits from the Township. The Township advised Mount that it needed additional variances because the property was less than 50% woodlands and thus did not comply with the overlay district. The Township apparently notified Mount that it must replant 75 trees, which reflects 50% of the 145.6 trees that Mount removed. Notes of Testimony (N.T.) Hr'g, 6/2/22, at 16-17 (quoting the Township's engineer's letter).[4]

Mount applied for a variance from the Board in 2022, specifically requesting relief from two sections of the zoning ordinance, which we discuss below. Simply, Mount wanted a variance from the requirement that the property be at least 50% woodlands.

The Board held two hearings. At the initial hearing, Mount's principal, Jake Kaplan, testified that Mount could not replace all of the trees because of insufficient space. N.T. Hr'g, 6/2/22, at 15. Per Kaplan, Mount would have had to plant trees "on top of each other" and Mount was advised not to "ask for a variance to plant trees right next to each other because long term that's not a good solution." *Id.*; *accord id.* at 14 (reflecting Farrall's comment that if the proposed addition was built, there was only "room for some, but not all" of the trees so Mount would have to "donate to the tree bank or something"). Mount's proposed plans—apparently not a "landscape plan"—depict "trees . . . as tightly spaced as is permitted under the code to be planted in the remainder of the property. So areas that are currently turf would essentially become woodlands based on our plans." *Id.* at 16, 18 ("I don't have a big

---

[4] No one addressed the math discrepancy. Kenneth Farrall, the Township's Director of Building and Planning/Zoning Officer, was apparently quoting the letter. Farrall was not sworn in, and the letter is not part of the record.

enough property I believe to replace every one of them."). The Board continued the hearing to permit Mount to present a "landscape plan." *Id.* at 19.

At the subsequent hearing, Mount submitted a landscape plan that would add 73 trees to the property. N.T. Hr'g, 7/7/22, at 6. Mount's counsel explained that in Mount's view, if it had "146 trees, woodlands on site, [it] would need to retain 73 trees to be compliant" with the ordinance. *Id.* at 7; *accord* N.T. Hr'g, 6/2/22, at 16-17 (reflecting Township's notice that Mount must replant half of the trees it removed). Mount's counsel stated that "if we had 146 trees, woodlands on site, we would need to retain 73 trees to be compliant from a zoning standpoint. Instead of retaining the trees, we are replacing the trees, so we are, again, in my opinion, complying with the ordinance as it's intended to be understood." N.T. Hr'g, 7/7/22, at 7. Kaplan similarly acknowledged that Mount could not "put back the trees that we took down," but reiterated that Mount was doing "everything in [its] power to" comply with the ordinance. *Id.* at 8.

The Board expressed its concern that the new trees would average 2.5 inches in diameter in contrast to the removed trees, which averaged 9.5 inches in diameter. *Id.* at 12. The Board questioned Mount as to whether it could replant similarly sized trees. *Id.* at 12-13. Kaplan explained that the "success rates of" replanted "larger trees are much lower than the smaller trees long term." *Id.* at 15.

The Board unanimously denied Mount's application, reasoning, *inter alia*, that Mount failed to establish (1) the uniqueness of the property; (2) the variance was necessary to use the property; (3) Mount did not create the hardship; (4) the variance would not alter the character of the neighborhood; and (5) the variance was the minimum relief required. Bd.'s Op., 8/8/22, at 3.

Mount timely appealed to the trial court. Notice of Appeal, 8/17/22.

4

The trial court took no evidence and, after argument, denied Mount's appeal. Order, 3/22/23. Mount timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed an opinion reasoning, in relevant part, that Mount self-created the hardship by impermissibly removing the trees. Trial Ct. Op. at 10.

## II. ISSUE

Mount contends that the trial court erred by denying the request for a variance under Bensalem Zoning Ordinance Sections 232-57(a)(1)(b.)-(c.). Mount's Br. at 4.

## III. DISCUSSION[5]

In support, Mount argues that because it cannot "preserve" trees that it removed previously, the only remedy is to replant the trees. *Id.* at 11, 17. Mount reasons that regardless of whether it had originally preserved 73 trees or replanted 73 trees, the result is the same: Mount would comply with the ordinance's 50% woodlands requirement. *Id.* at 11, 17-18 (arguing that the Township cannot deny Mount's variance application, when "the proposed [plan] would remedy that violation"). If Mount had chopped down 73 trees, Mount contends that its proposed addition would have been approved without any "need for zoning relief." *Id.* at 12. Mount emphasizes that in 2021, the Board approved Mount's original application for

---

[5] "Where a court of common pleas takes no additional evidence in reviewing a land use appeal determination by a zoning hearing board, this Court's standard of review is limited to determining whether the local governing body that issued the challenged decision abused its discretion or committed an error of law." *In re City Turf Club Op Co.*, 308 A.3d 351, 357 (Pa. Cmwlth. 2024) (*Turf*) (citations omitted). "Local governing bodies abuse their discretion by making factual findings that are not supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up); *see also* 2 Pa.C.S. § 754 (stating the reviewing court must affirm unless it finds "that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence"). We apply the rules of statutory construction when we interpret local ordinances, regulations, and rules. *See S & H Transp., Inc. v. York*, 210 A.3d 1028, 1038 (Pa. 2019).

the dimensional variances. *Id.* at 16. Mount claims that its proposed plan is identical "except for the addition of the" 73 trees. *Id.* Mount adds that the result of the Board's denial is that Mount cannot build its addition. *Id.* at 19. Mount concludes by suggesting that the Board's denial also harms future owners. *Id.* at 19-20.

The Township counters that "substantial uncontested evidence" supports the Board's decision. Township's Br. at 4 (emphasis omitted). In its view, Mount's alleged hardship was "self-created" and the requested relief "does not constitute the minimum modification possible." *Id.* at 4, 8. The Township rejects Mount's offer to "cure" its prior violation, because such an offer does not negate the fact that Mount self-created the hardship. *Id.* at 9. The Township argues that the Board's grant of Mount's original variance application was "based on incomplete information" and did not obligate the Board "to grant any future relief." *Id.* at 4, 10. Finally, Mount's requested remedy, per the Township, merely permits it to maximize its "economic benefit, which does not entitle" it to a variance. *Id.* at 5, 11-12.

The Board generally reiterates the Township's arguments. In addition, the Board contends that all parties agree that if the addition was built, there would be insufficient room for the trees to grow. Bd.'s Br. at 11-12. Per the Board, Mount would be planting the trees "right next to each other," which the Board construes as evidence that Mount values profit over compliance with the ordinance. *Id.* at 12. The Board opines that Mount is not entitled to relief under the Pennsylvania Municipalities Planning Code (MPC)[6] or *Hertzberg v. Zoning Hearing Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998). *Id.* at 13. The Board construes Mount's public policy and equity arguments as attempts to invoke the doctrine of equitable estoppel despite having "unclean hands." *Id.* at 21, 23. The Board emphasizes that its initial decision granting Mount's variance application did

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

6

not involve the "woodlands" part of the ordinance. *Id.* at 24.

The Township's ordinance provides that properties within the natural resource protection overlay district must comply with the following. First, woodlands "shall be preserved in at least a 50 percent natural open space state where such area contains neither wetland nor significant natural features." Bensalem Twp. Ordinance § 232-57(a)(1)(b.). Second, woodlands "not preserved in a 100 percent natural open space state shall be managed by the property owner under a comprehensive plan approved by the Township, and designed to maintain and enhance the area's value for environmental, scenic, recreational and economic uses." *Id.* § 232-57(a)(1)(c.).[7]

Under the MPC, a zoning hearing board assesses "where relevant" five factors in resolving whether to grant a variance. 53 P.S. § 10910.2.[8] One factor is

---

[7] We quote the relevant language as follows:

(a) [Natural resource protection] districts shall comply with the following performance standards:
    (1)Woodlands: . . .
        b. Woodlands shall be preserved in at least a 50 percent natural open space state where such area contains neither wetland nor significant natural features.
        c. Woodlands not preserved in a 100 percent natural open space state shall be managed by the property owner under a comprehensive plan approved by the Township, and designed to maintain and enhance the area's value for environmental, scenic, recreational and economic uses.

Bensalem Twp. Ordinance § 232-57(a)(1)(b.)-(c.).

[8] Specifically:

(a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. . . . The board may grant a variance, provided that all of the following findings are made where relevant in a given case: . . .
    (3) That such unnecessary hardship has not been created by the appellant. . . .

Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a)(3). The Ordinance mirrors the MPC's factors. *See* Bensalem Twp. Ordinance § 232-781(3) (stating the five factors for

7

whether the owner created the unnecessary hardship. *Id.* § 10910.2(a)(3). The board is not required to render findings on all five factors unless relevant to deciding the variance. *Sweeney v. Zoning Hr'g Bd. of Lower Merion Twp.*, 626 A.2d 1147, 1152-53 (Pa. 1993).

If the owner requested a dimensional variance, we have explained that a lesser "quantum of proof" is "necessary to establish unnecessary hardship" than the proof required for a use variance. *Goldstein v. Zoning Hr'g Bd. of Twp. of Lower Merion*, 19 A.3d 565, 567 n.4 (Pa. Cmwlth. 2011) (discussing *Hertzberg*).[9] Regardless, for either a dimensional or a use variance, an owner "must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hr'g Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (*Tri-Cnty.*). "Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*." *Id.* (citation omitted). For example, even if the owner establishes an unnecessary hardship for a use variance under one factor, the applicant must still prove that it did not create the unnecessary hardship. *See* 53 P.S. § 10910.2(a)(3); *Larsen v. Zoning Bd. of Adjustment of City of Pittsburgh*, 672 A.2d 286, 290 (Pa. 1996) (explaining that an owner's failure to satisfy even one of the variance criteria

---

granting a variance); *id.* at (3)(e) ("That such unnecessary hardship has not been created by the appellant.").

[9] "When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation." *Hertzberg*, 721 A.2d at 47. Because Mount's proposed use is permitted by the zoning regulation, an application for a variance from the woodlands requirement appears to be more akin to a dimensional variance.

justifies denial).

The MPC does not define "self-created" hardship. It is long settled, however, that "a variance is properly refused where the hardship results from the [owner's] own willful violation of the zoning regulations." *Stratford Arms, Inc. v. Zoning Bd. of Adjustment*, 239 A.2d 325, 327 (Pa. 1968) (*Stratford*). Even if an owner lacked knowledge of the violation, we have held that was "not a legally sufficient reason to grant a variance." *Boyd v. Wilkins Twp. Bd. of Adjustment*, 279 A.2d 363, 364 (Pa. Cmwlth. 1971) (*en banc*) (noting that arguments "relating to innocence in the violation of a zoning ordinance . . . may be proper in the consideration of a remedy . . . but not on the question of the legal right to a variance"). The *Boyd* Court affirmed the denial of the owners' request for a variance even though they did not willfully violate the ordinance. *Id.*

Similarly, in *Goldstein*, the property owners constructed a building (building one) that violated a setback provision. *Goldstein*, 19 A.3d at 566. Generally, a setback establishes a minimum amount of space between a building and a particular boundary. The owners obtained a permit to construct, and did construct, another building (building two), which also violated the setback provision. *Id.* The building permit, however, was contingent on building one "being removed or permitted to remain by order of the" zoning board, which the owners did not do or obtain. *Id.* The owners nevertheless applied for a variance from the setback provision, which the zoning board denied. *Id.* The zoning board reasoned, *inter alia*, that the owners self-created the hardship by constructing both buildings. *Id.* The owners eventually appealed to this Court, which affirmed, reasoning that because the owners constructed building two "without first acquiring a variance from" the zoning board, the owners self-created their hardship. *Id.* at 569; *see also*

*Stratford*, 239 A.2d at 327; *Larsen*, 672 A.2d at 291 (affirming denial of variance because the owners "themselves created the complained of hardship" by building an addition, which precluded any future addition absent a variance).

Instantly, similar to the property owners in *Boyd* and *Goldstein*, Mount removed 145.6 trees, which violated the zoning ordinance. Regardless of whether Mount's tree removal was innocent, as in *Boyd*, or intentional, as in *Goldstein*, it cannot be disputed that Mount self-created the hardship. Under either 53 P.S. § 10910.2 or *Hertzberg*, Mount was required to establish that it did not create an unnecessary hardship. *See Tri-Cnty.*, 83 A.3d at 520; *Goldstein*, 19 A.3d at 567 n.4.

Further, under *Boyd*, it does not matter whether Mount plants 73 new trees or 146 trees because Mount's proposed remedy has no bearing "on the question of the legal right to a variance." *Boyd*, 279 A.2d at 364. Framed differently, Mount's failure to apply for an appropriate variance *before* removing the trees is fatal. *Cf. Goldstein*, 19 A.3d at 569.

Regardless, the ordinance provides that woodlands "shall be *preserved* . . . ." Bensalem Twp. Ordinance § 232-57(a)(1)(b.) (emphasis added). Mount's proposed remedy of replacing mature woodland trees that averaged 9.5 inches in diameter with new trees that average 2.5 inches in diameter does not "preserve" (or restore) the original woodlands. *See, e.g.*, N.T. Hr'g, 7/7/22, at 12. Mount also admitted that its proposed plan packs trees "as tightly spaced as is permitted under the code to be planted in the remainder of the property," which does not appear to provide the same "environmental, scenic," and recreational use as more mature woodlands. Bensalem Twp. Ordinance § 232-57(a)(1)(c.).

To the extent that Mount raises (1) some form of estoppel based on the Board's earlier approval of its initial variance application, and (2) public policy

concerns, *see* Mount's Br. at 19-20, we disagree for several reasons. First, Mount waived these arguments by failing to cite any caselaw. *See* Pa.R.A.P. 2119(a) (requiring citation and discussion of pertinent caselaw). Regardless, second, Mount's original application sought a variance under sections of the ordinance governing stormwater drainage and steep slopes. *See* Bd.'s Op., 9/9/21, at 7. In contrast, Mount's instant application seeks a variance from the 50% woodlands requirements. *See* Bd.'s Op., 8/8/22, at 3. Indeed, the Board continued the hearing to permit Mount to introduce a "landscape plan" that detailed how Mount would add 73 trees to the property. *See, e.g.*, N.T. Hr'g, 7/7/22, at 6-7. Third, it is well settled that generally, courts have no right to decide a case based on public policy. *See Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009).

In sum, Mount self-created the hardship. While Mount's proposed remedy mitigating its self-created hardship may be laudable, even an *innocent* violation leading to a self-created hardship is legally insufficient to grant a variance. *See Boyd*, 279 A.2d at 364.

## IV. CONCLUSION

For all these reasons, having discerned no abuse of discretion or error of law, we affirm the trial court. *See Turf*, 308 A.3d at 357.

_____
**LORI A. DUMAS, Judge**

Judge Covey did not participate in this decision.

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

In re: Appeal of Mount Corporation :
from the Decision of the Zoning :
Hearing Board of Bensalem Township :
dated August 8, 2022 : No. 373 C.D. 2023
:
Appeal of: Mount Corporation :

# **O R D E R**

AND NOW, this 20th day of December, 2024, we AFFIRM the order entered on March 22, 2023, by the Court of Common Pleas of Bucks County.

_____
**LORI A. DUMAS, Judge**